Richardson, J., delivered the opinion for a unanimous Court.
Appellant, Jamel McLelland Fowler, was convicted of stealing a Kawasaki Mule all-terrain vehicle (ATV) (valued at $1,500 or more but less than $20,000) from complainant Paul Blassingame.[1] The jury assessed his punishment at confinement for two years. Fowler appealed his conviction. The Sixth Court of Appeals found the evidence sufficient to support Fowler's conviction; however, it reversed the conviction, holding that the trial court committed reversible error by admitting an unauthenticated videotape exhibit into evidence.[2] We disagree and hold that the trial court did not abuse its discretion by admitting the video.
BACKGROUND
In 2014, Fowler was charged with three separate offenses which were consolidated and tried together. This appeal involves only the conviction arising out of the theft of a Kawasaki Mule ATV. The owner of the ATV reported that it had been stolen from property he owned in Hunt County. Officer Jaime Torrez was called to testify for the State. Officer Torrez testified that during the months of November and December, 2014, he responded to "numerous burglary calls to the Lattimore Materials business" in Royse City, Texas. The first call was in early November 2014. Upon investigating, he discovered an area where some heavy-duty wires or cables were cut, and he retrieved three bolt cutters nearby. Based on his training and experience, Officer Torrez seized the bolt cutters, believing that they could have been used by the burglars to cut locks, wire, cables, and chain-link fences located on that property. Officer Torrez described the process he went through when collecting evidence and logging it in. There was also evidence presented at the trial that multiple bolt cutters were found in Fowler's truck, and that *846 Fowler's truck was seen driving at odd hours and under suspicious circumstances in the neighborhood near Lattimore Materials.
Officer Torrez then testified that he and another officer, Officer Dial, were called back to Lattimore Materials about a month later, in December 2014. They followed tire tracks believed to belong to an ATV leading from the Lattimore Materials building that had been burglarized. Officer Torrez testified that Officer Dial located an ATV in an open field near a heavy tree line about 100 yards north of the Lattimore Materials building. Officer Torrez found the VIN number to the ATV, and dispatch confirmed that it had been reported stolen.
On the ground about three feet from the ATV was a paper receipt from a Family Dollar store. On that receipt, which is date- and time-stamped, was listed "silver duct tape", Glade Air Freshener, two "utility knives" (also referred to by the witness as "cutters" or "box cutters")[3] , and a "razor scraper" with five blades. The officers also found packaging for the box cutters lying on the ground about 15 to 20 feet from the ATV. Officers Dial and Torrez placed the evidence in an evidence locker and followed proper procedures to log all of these items into evidence. Officer Torrez testified that, based on his training and experience, what they found signified "that someone went to the Family Dollar, purchased the item, and probably was at that location with the other items there."
Later that day Officer Torrez and another officer (Officer Meek) went to the Family Dollar store that issued the receipt they had found near the ATV. Officer Torrez spoke with the manager of the store and asked for surveillance footage from the date and time listed on the receipt. The manager of the store retrieved a videotape stamped with the same date and time as on the receipt. Since the video was not in a format that allowed it to be copied, under Officer Torrez's supervision, Officer Meek used his Royse City Police Department camera to record a copy of the surveillance video. After the videotape was recorded by the police, they went back to the Royse City Police Department where the video recording was then downloaded onto a hard drive and attached to the case report. There was no audio on the tape.
Defense counsel objected to the admission of the videotape based first on the argument that the video was an incomplete copy of a recording:
[T]he video that [he] watched ... had four panes.... [A]nd in the process of his making a recording, he zeroed in on one or two different panes.... So, therefore, we have an incomplete copy of whatever it is that we have.... If he had videoed all four frames, that might be a different issue than what I'm dealing with right now ... is it a true and accurate copy because then it would have been.... [W]hen you're singling out certain portions and not making available the entire thing, that's the problem.
Defense counsel insisted that "They've got to establish why their original is not available, not that it's just not available.... They need somebody from the Family Dollar store to say, I'm sorry we can't give you that so, therefore, now you get to use this one." However, the trial court judge did not seem troubled by the fact that the video exhibit was a recording of a recording, nor was that considered a problem by *847 the court of appeals: "The fact that the challenged video recording is a recording of a recording is not the problem which must be addressed.... Torrez adequately demonstrated that the recording he made of the store's surveillance monitor was a duplicate copy of the relevant part of the original surveillance recording."[4]
In responding to the defense counsel's objection, the State agreed with the defense that the judge should review the recording to determine if it was properly authenticated and hence admissible. After watching the video, the trial judge stated as follows:
All right. We're back on the record. I think that there's one question I need to ask to make sure before I know how to proceed. And that is this, has the officer testified-I didn't hear it if he did. And I don't know if the officer has testified how he determined what time and date he was going to make the video for.... And so I think I'm going to-I would sustain the objection at this time to the admission of this until it's established what time and date. But let me say that my review of both State's Exhibit 120 and of the law says that authentication of a video under Kephart v. State, 875 S.W.2d 319 [ (Tex. Crim. App. 1994) ] is the same as a still photograph. That it depicts what it purports to depict. And the officer has testified that he made this video and how he made the video. I think the fact-just to be quite honest with you, the fact that all four frames are not depicted is not going to prevent the admissibility of this document or this video. I don't-I don't think that it does because the officer doesn't-it depicts what it purports to depict.... but I believe he needs to testify before I can rule on the admissibility of it as to how he determined when and what to videotape. And I don't think I've heard that yet.
The jury was brought back in, and the State elicited the following testimony from Officer Torrez to authenticate the video:
Q. Officer Torrez, we were talking about going up to the Family Dollar store and doing a recording. What specifically were you looking for on the recording at the Family Dollar surveillance video?
A. On the receipt it had a time and date.
Q. And did you use that information-what did you do with the information that was on State's Exhibit 119 [the receipt] when you went up to the Family Dollar video [sic ] store?
A. The video was-I guess the time and date of the receipt was also located on the video.
Q. Did you personally take the time and the date on the receipt to pull up your video to that spot or did you ask somebody to do that?
A. I asked one of the-the manager.
Q. Okay. And what, after you asked the manager to do that, made you feel-made you believe that he pulled up what you wanted to be recorded?
* * *
A. The same time and date on the video was the same that was on the receipt.[5]
The defense objected that a proper predicate had not been laid, but the trial court overruled the objection and admitted the video into evidence.
The officer then testified that, on the video, the customer, who turned out to be Fowler, was "holding [ ] in his hand"
*848 "some cutters in a plastic wrap." The State argued that the video depicted Fowler entering the store and purchasing the items listed on the receipt that was found near the stolen ATV. The jury found Fowler guilty of theft of property valued at between $1,500 and $20,000 and rendered a punishment verdict of two years' confinement.
ANALYSIS
Texas Rule of Evidence 901 governs the authentication requirement for the admissibility of evidence:
(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.[6]
Authenticity may be established with evidence of "distinctive characteristics and the like," which include "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."[7] Conclusive proof of authenticity before allowing admission of disputed evidence is not required.[8] Rule 901"merely requires some evidence sufficient to support a finding that evidence in question is what the proponent claims."[9]
On direct appeal, Fowler claimed that the trial court reversibly erred in admitting into evidence the surveillance video from the Family Dollar store. The court of appeals agreed with Fowler that the video of the store's surveillance footage had not been properly authenticated under Rule of Evidence 901 and was therefore improperly admitted into evidence.[10] We granted the State's petition for discretionary review to answer the following question:
May the proponent of a video sufficiently prove its authenticity without the testimony of someone who either witnessed what the video depicts or is familiar with the functioning of the recording device?
Our answer to this question is-yes, it is possible.
Appellate review of a trial court's ruling on authentication issues is done under an abuse of discretion standard.[11] This deferential standard requires an appellate court to uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement.[12] A trial court judge is given considerable latitude with regard to evidentiary rulings. Different trial judges may "reach different conclusions in different trials on substantially similar facts without abusing their discretion."[13]
If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least "within the zone of reasonable disagreement," a reviewing court should not interfere.[14] In Butler v. State , we clarified that "it is the jury's role ultimately to determine whether an item of evidence is indeed what its *849 proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic."[15] This has been described as a "liberal standard of admissibility."[16]
With regard to the authentication of the videotape recording, the court of appeals held as follows:
While the date and time on the lower center part of the screen on Torrez' recording of the store recording generally corresponds with the date and time on the receipt found near the ATV, there was no evidence that the surveillance system was working properly on the date in question, that its on-screen clock was correctly set and functioning properly, or that the original accurately portrayed the events that purportedly occurred at the time and on the date shown in the video record. Without such proof, there was no showing that the store's video recording was made on the same day as the receipt or that it accurately portrayed what the State alleged that it portrayed.[17]
The court of appeals's point is well-taken-the State could have done more. However, even though the most common way to authenticate a video is through the testimony of a witness with personal knowledge who observed the scene, that is not the only way . Evidence can also be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."[18]
Video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to a disputed issue.[19] The State presented the following circumstantial evidence to authenticate the video recording:
• the officer's in-person request of the manager of the Family Dollar store to pull the surveillance video on a certain date at a certain time;
• the distinctive characteristic that there is a date and time stamp on the videotape;
• the fact that the date and time on the videotape correspond to the date and time on the receipt that was found within three feet of the ATV;
• the fact that the videotape pulled by the manager reveals Fowler at the store on that date at that time purchasing the items listed on the receipt *850 that was found near the stolen ATV.
Admittedly, the State could have produced testimony from witnesses who would have further authenticated the videotape, such as the manager of the Family Dollar store who pulled the videotape from the shelf, or the employee of the Family Dollar store who was responsible for maintaining the surveillance equipment, or the employee of the Family Dollar store who was working the cash register in question on the exact date and at the exact time on the videotape. However, a zone of reasonable disagreement is exactly that-a zone. We hold that the trial court's determination-that Officer Torrez supplied facts sufficient to support a reasonable jury determination that the videotape was authentic-was a decision still within the zone of reasonable disagreement.[20] The trial court did not err in admitting the videotape. Because the court of appeals erred in holding that the video recording was improperly admitted into evidence, we reverse that portion of the judgment of the court of appeals.[21]
The court of appeals also addressed Fowler's challenge regarding legal sufficiency and held that "the evidence was sufficient for a rational jury to have found beyond a reasonable doubt that Fowler stole Blassingame's ATV."[22] However, because it held that the video recording was erroneously admitted, the court of appeals reversed Fowler's conviction even though it found the evidence legally sufficient to support the conviction.[23] The court of appeals did not address Fowler's third point of error challenging the introduction of extraneous offense evidence.[24] We therefore remand this case to the court of appeals to address Fowler's remaining point of error.

See Tex. Pen. Code § 31.03(e)(4)(A). This case was tried with two other cases charging Fowler with burglary of a building. In the first burglary case he was accused of breaking into a building owned by William Martin and stealing various items. In the second burglary case he was charged with burglarizing a building and stealing a trailer. The State moved to consolidate the three cases because the offenses were alleged to be intertwined. Fowler did not oppose consolidation. The State obtained a conviction on only this theft case.

Fowler v. State , 517 S.W.3d 167 (Tex. App.-Texarkana 2017), withdrawing and superseding Fowler v. State , No. 06-16-00038-CR, 2017 WL 378758 (Tex. App.-Texarkana Jan. 27, 2017).

References to "cutters" or "box cutters" are distinguished from the references to bolt cutters.

Fowler , 517 S.W.3d at 172-73.

(emphasis added).

Tex. R. Evid. 901(a).

Tex. R. Evid. 901(b)(4).

See Reed v. State , 811 S.W.2d 582, 587 (Tex. Crim. App. 1991) (citing United States v. Lopez , 873 F.2d 769 (5th Cir. 1989) ).

Id.

Fowler , 517 S.W.3d at 174.

Angleton v. State , 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).

Powell v. State , 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

Winegarner v. State , 235 S.W.3d 787, 791 (Tex. Crim. App. 2007).

Tienda v. State , 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

Butler v. State , 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (citing Tienda , 358 S.W.3d at 638 ).

Id. (citing Cathy Cochran, Texas Rules of Evidence Handbook 922 (7th ed. 2007-08) ); see also David A. Schlueter & Robert R. Barton, Texas Rules of Evidence Manual § 901.02(2)(b) ("Because Rule 901(a) treats authentication as a matter of conditional relevancy, the judge must first conclude that the jury could find that the evidence is what the proponent says it is. Whether it is true or has probative value is another question.... The showing required by this Rule is apparently prima facie."); Winegarner , 235 S.W.3d at 791 ("[T]he Texas Rules of Evidence are intentionally slanted toward the inclusion of all relevant evidence, ....").

Fowler , 517 S.W.3d at 174.

Tex. R. Evid. 901(b)(4) ; see Druery v. State , 225 S.W.3d 491, 502 (Tex. Crim. App. 2007) (holding that the evidence in question was properly authenticated because it contained "sufficient distinctive internal characteristics" to support a finding that it was what the proponent claimed it was).

Huffman v. State , 746 S.W.2d 212, 222 (Tex. Crim. App. 1988).

Tienda , 358 S.W.3d at 638 ; Druery , 225 S.W.3d at 502.

Tex. R. App. P. 78.1(c) ("The Court of Criminal Appeals may reverse the court's judgment in whole or in part...").

Fowler v. State , 517 S.W.3d at 176.

Id. The sufficiency issue decided by the court of appeals was not presented to this Court for review.

Id. at n.17.