**AFFIRM; and Opinion Filed July 17, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00467-CR

**ESTEVAN RENDON LARA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F15-76060-M**

# MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Schenck

Estevan Rendon Lara appeals his conviction for murder. In his first issue, he challenges the sufficiency of the evidence to support his conviction. In his second, third, fourth, sixth, and seventh issues, he challenges various of the trial court's evidentiary rulings. In his fifth issue, he urges the trial court erred by denying his request for a jury instruction on the lesser included offense of criminally negligent homicide. We affirm the trial court's judgment in all respects. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

Ladonna Gist worked as the morning desk clerk and manager at a motel in Dallas. Appellant lived in a room at that motel, was friendly to Gist, and sold drugs to her and others in the motel. Motel personnel and those purchasing drugs from appellant know him as "Cesar."

In the early hours of July 31, 2015, Brenda Leatherwood, a motel guest, woke up to a loud "pounding noise" at her motel room door. She looked through the peephole and saw no one, so she opened the door and saw someone lying in the hallway in front of motel room appellant occupied. Leatherwood recognized the motel room as appellant's because she knew him and had purchased drugs from him before. As she approached the person lying in the hallway, she realized it was Gist. Gist had been shot in the face, but she was still gasping for air and choking on her own blood. Leatherwood shouted to the night manager, instructing him to call an ambulance. A few minutes later, as Leatherwood was about to knock on appellant's door, it opened, and appellant and four other people ran out of the room. Appellant yelled at Leatherwood to "move," and ran past her, carrying a gun. None of the other four people who ran with appellant carried a gun. Later that day, the police arrested appellant at the house of one of his friends.

A grand jury indicted appellant for murder. He pleaded not guilty, and the case proceeded to trial before a jury who found appellant guilty as charged and sentenced him to a term of life imprisonment.

## DISCUSSION

### I.      Sufficiency of the Evidence

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction for murder, urging that the State failed to establish (1) that he had the requisite mental state to murder Gist and (2) appellant's identity as the shooter.

When reviewing the record for legal sufficiency, we consider the combined and cumulative force of all admitted evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017).

A person commits murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02. A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. *See id.* § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *See id.* § 6.03(b).

Adrian Martinez, who was in the room with appellant on the night in question, testified he thought appellant was firing at someone who was trying to shoot into the room from outside, although he heard no gunshots before appellant began shooting his gun. He saw appellant shoot his gun eight times at the closed door to the motel room. A crime scene analyst testified that she found seven fired cartridge cases and one unfired cartridge in inside appellant's room. As noted, Leatherwood testified that a few minutes after she found Gist, she was about to knock on appellant's door, when it opened, and appellant and four other people ran out of the room. Appellant yelled at Leatherwood to "move," and ran past her carrying a gun. The record also contains surveillance video recordings of the motel from which the jury could see appellant run out of his room without stopping to examine Gist as she lay dying at his front door. Maria Hernandez, a friend of appellant's, testified she spoke to appellant the morning after the shooting and that he told her he shot someone thinking it was his brother who had tried to kill him a couple of months before. We conclude from this evidence that a jury could rationally find appellant acted intentionally or knowingly in shooting several times through the closed room of a motel room door, which caused Gist's death.

We now turn to appellant's complaints regarding sufficiency of the evidence to prove his identity as the shooter. There is no question that the State is required to prove beyond a reasonable

doubt that the accused is the person who committed the crime charged. *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Evidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence or by reasonable inference. *See id.*; *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

Appellant cites the following evidence in urging the record contained insufficient evidence to support his conviction. Martinez stated twice before the jury that the person who fired the gun was not present in the court room, and Kamesh Modi, the motel's night manager, failed to identify appellant as "Cesar" in the courtroom. Leatherwood admitted she had been using drugs before she saw appellant leave his room with a gun in his hand, and Detective Esteban Montenegro, who secured the surveillance video recordings, testified that he could not tell from the surveillance video whether appellant had a gun in his hand and that he could not conclude, based on the video alone, that appellant was the shooter. Appellant also points out that Martinez was never investigated as a suspect despite the fact that he was present in the room on the night in question, admitted to owning and using guns, and was known to be violent.

As noted above, the jury heard Martinez testify he saw appellant shoot through the closed door of the motel room. Martinez also positively identified appellant in the courtroom at trial and testified appellant was the person who shot through the motel door despite having testified the person who fired the gun on the night in question was not in the courtroom. Leatherwood testified she saw appellant run out of his room while carrying a gun. She further stated that no other person who came out of appellant's room was carrying a gun. The record contains surveillance video recordings of the motel from which the jury could see appellant run out of his room and into a car carrying something that could have been a gun. Hernandez testified she spoke to appellant the morning after the shooting and that he told her he shot someone. From the foregoing evidence, a jury could rationally find that appellant was the shooter who killed Gist. As for any conflicting

–4–

inferences from Martinez's or Modi's testimony, we presume that the jury resolved the conflicts in favor of the verdict and therefore defer to that determination. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

We overrule appellant's first issue.

## II.     Evidentiary Admissions during Guilt/Innocence Phase of Trial

### A.     *Video Surveillance Recordings*

In his second issue, appellant urges the trial court erred by admitting video recordings from surveillance cameras at the motel, specifically arguing the State failed to lay the proper predicate for establishing the video recordings were admissible.

Texas Rule of Evidence 901 governs the authentication requirement for the admissibility of evidence:

> In General.  To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

TEX. R. EVID. 901(a).  Authenticity may be established with evidence of "distinctive characteristics and the like," which include the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.  TEX. R. EVID. 901(b)(4).  Conclusive proof of authenticity before allowing admission of disputed evidence is not required. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).  Rule 901 merely requires some evidence to support a finding that the evidence in question is what the proponent claims it to be. *Id.*

We review authentication decisions for an abuse of discretion. *Id.*  This deferential standard requires us to uphold a trial court's admissibility decision so long as it fits within "the zone of reasonable disagreement." *Id.*

Video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to a disputed issue. *Id.* The State presented the following evidence to authenticate the video recording:

- Testimony from Modi establishing the motel had 16 cameras, and evidence the motel manager knew what view each camera shows.

- Testimony from Modi that the police asked him to "pull videos" from the cameras, that he did so, and that the discs offered as evidence by the State were the same ones he gave to the police.

- Further testimony from Modi that the videos had not been altered or deleted and that they gave an accurate representation of what happened on July 31.

- Testimony from Detective Montenegro that he secured the video recordings from the motel.

Appellant complains the video recordings were not properly authenticated because although Modi initially testified that the videos were an accurate representation of what took place, when asked the same question later, he answered "no" in connection with a series of questions including whether the tapes had been altered.[1] However, even assuming Modi's testimony was not sufficient to authenticate the video, evidence prematurely admitted in error may become admissible or be rendered harmless by the introduction of subsequent evidence. *Rice v. State*, 05-15-01427-CR, 2017 WL 359755, at *3 (Tex. App.—Dallas Jan. 19, 2017, pet. ref'd) (mem. op., not designated for publication). Here, Detective Montenegro testified he visited the motel before

---

[1] STATE: Now, do these videos give an accurate representation of what happened on the videos that night?

MODI: Yeah. I see the video near the Room 111. Inside, start the shooting.

STATE: Okay. Before you go into anything, we just want to make sure that these videos haven't been changed in any way?

MODI: No.

STATE: And that they had an accurate representation of what they're supposed to depict?

MODI: No.

STATE: And those were given to the police, correct?

MODI: Yeah.

–6–

Gist's body was removed and spoke to Leatherwood who described what she had heard and seen. The detective also stated he had previously watched the video recordings and testified what portions of the video recordings showed while they were played for the jury. The evidence was sufficient for a jury to reasonably find that the images in the video recordings were accurate representations of the scene and events at the motel. *See id.*

We overrule appellant's second issue.

### B. Witness Testimony via FaceTime

In his third issue, appellant urges the trial court abused its discretion by permitting a witness to testify electronically using FaceTime, arguing his Sixth Amendment right to confrontation was violated by the admission of this testimony.

On the second day of trial, the court conducted a hearing outside of the presence of the jury on the State's motion to allow video telephonic testimony of a witness. During that hearing, the prosecutor informed the court that a State's witness, Hernandez, had suffered a heart attack the previous night and was in the hospital. The prosecutor stated Hernandez was unable to come to court, but that she was able to testify via FaceTime, which would allow Hernandez to see who was examining her, the defendant to see and confront her, and the jury to see Hernandez and assess her credibility. Defense counsel objected to the State's motion, arguing that permitting Hernandez to testify outside of a courtroom environment would deter her from being honest and deliberate in her testimony. He further argued that Hernandez's medical condition—a recent heart attack— might cause jurors to sympathize with her, and he expressed concern about whether he could cross-examine Hernandez without causing her "additional grief." The trial court granted the State's motion and administered the oath to Hernandez. The trial court informed the jury Hernandez was currently in the hospital and appearing by FaceTime and instructed the jury "not to let sympathy enter into play."

The Sixth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment provides criminal defendants with the right to be confronted with the witnesses against him. U.S. CONST. amend. VI. This provision, known as the Confrontation Clause, guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). But the right to a physical face-to-face meeting is not absolute and must give way in certain narrow circumstances where considerations of public policy and necessities of the case so dictate. *Maryland v. Craig*, 497 U.S. 836, 848 (1990).[2]

Texas courts have allowed witnesses to testify electronically when the witness was a child, on active military duty in another country, seriously ill, or had a high-risk pregnancy. *See Gonzales v. State*, 818 S.W.2d 756, 764 (Tex. Crim. App. 1991) (child); *Rivera v. State*, 381 S.W.3d 710, 71213 (Tex. App.—Beaumont 2012, pet. ref'd) (military); *Paul v. State*, 419 S.W.3d 446, 459 (Tex. App.—Tyler 2012, pet. ref'd) (illness); *Acevedo v. State*, 05-08-00839-CR, 2009 WL 3353625, at *8 (Tex. App.—Dallas Oct. 20, 2009, pet. ref'd) (not designated for publication) (pregnancy). The key inquiry is whether the method of electronic testimony used by the State preserves the salutary effects of face-to-face confrontation relevant to a Sixth Amendment analysis. *See Stevens v. State*, 234 S.W.3d 748, 782 (Tex. App.—Fort Worth 2007, no pet.) (citing *Craig*, 497 U.S. at 845–46). The salutary effects of face-to-face confrontation include (1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the fact-finder to observe the demeanor of the witness, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence. *See id.*

---

[2] Appellant's briefing appears to rely on the federal, rather than state, constitutional right to confront one's accusers. However, we need not decide whether his arguments invoke the state constitutional right of confrontation because Texas courts apply the same analysis on confrontation questions under both constitutions. *See*, *e.g.*, *Gonzales v. State*, 818 S.W.2d 756, 764 (Tex. Crim. App. 1991) (applying analysis under *Craig* to TEX. CONST. art. I, § 10).

Appellant urges not all the necessary characteristics of in-court testimony were preserved because Hernandez was in a hospital, not a courtroom and the jury might have additional sympathy for her, prejudicing appellant. Here, the record reflects the witness was sworn after a connection between her and the FaceTime call was initiated and defense counsel was able to cross-examine her. The prosecutor began her examination of Hernandez with: "the jury sees you on the TV screen. Do you see the jury sitting over in the box?" Hernandez responded, "yes." At the end of her examination, the prosecutor asked Hernandez to describe what appellant was wearing, which she was able to do. At no point did appellant object that either he or the jury was unable to see Hernandez. *See Horn v. Quarterman*, 508 F.3d 306, 313 n.9 (5th Cir. 2007) (concluding witness could see jury and court where record established defendant could see witness and witness could see defendant and there was no evidence or claim to the contrary). On this record, we conclude that the salutary effects of a face-to-face confrontation were preserved and that the trial court did not abuse its discretion by admitting Hernandez's testimony via FaceTime.

Appellant raises several other arguments against the admission of Hernandez's testimony via FaceTime. First, he urges the State failed to prove that exceptional circumstances existed to warrant permitting Hernandez to testify electronically because the State only offered its own representations as to Hernandez's health, not any evidence. Second, appellant urges there was no indication on the record as to whether the jury could actually see Hernandez or observe her demeanor. Finally, appellant complains there was no evidence of what medications Hernandez was taking that might have any altering effects on her state of mind, other than her response that she was not on any pain medication at the time. However, appellant did not make any of these complaints at trial. *See* TEX. R. APP. P. 33.1; *Holder v. State*, 05-15-00818-CR, 2016 WL 4421362, at \*15 (Tex. App.—Dallas Aug. 19, 2016, pet. granted) (not designated for publication). Accordingly, we need not address the arguments here. *See id.*

–9–

We overrule appellant's third issue.

### C.    *Expert Witness Testimony*

In his fourth issue, appellant urges the trial court erred when it permitted a lay witness to provide expert opinion testimony from an individual who is not qualified as an expert. Here, appellant complains there was no evidence Officer Julia Wayland had received any training or had any experience with gunshot residue evidence and that her testimony on the issue likely influenced the jury to conclude that appellant was the shooter.

At trial, Officer Wayland testified that on the day of the offense, she was a crime scene analyst for the Dallas Police Department and that she collected physical evidence in the instant case. She took photographs of appellant upon his arrest in order to document his appearance at that time. She also offered that appellant's hands were tested for gunshot residue. Pursuant to the prosecutor's next questions, Officer Wayland explained what gunshot residue was and that it was possible for someone to shoot a gun in the room and multiple people to have gunshot residue on them. At that point, the defense counsel objected to Officer Wayland's qualifications as an expert to testify. The trial court overruled the objection, and Officer Wayland proceeded to testify that it is possible for someone to fire a gun and not have gunshot residue if the person was "fully covered, wearing gloves."

An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Id.*

Expert testimony is governed by rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand evidence or to determine a fact in issue.

–10–

TEX. R. EVID. 702.

Even assuming the trial court abused its discretion by admitting Officer Wayland's challenged testimony, we conclude that error is harmless. Our rules provide that any error that does not affect substantial rights must be disregarded. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect. *Foster v. State*, 525 S.W.3d 898, 909 (Tex. App.—Dallas 2017, pet. ref'd). In assessing the likelihood the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other evidence in the case. *Id.* We examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Id.*

Here, the complained-of testimony merely explained what gunshot residue was, that appellant's hands had been tested for it, and that it was possible for a person to have gunshot residue on himself even if someone else in the room fired a gun. The issue of residue did not otherwise come into play at trial. In fact, the results of the gunshot residue test were not admitted into evidence. Moreover, the jury had additional evidence to support their finding that appellant shot Gist, as discussed above in our resolution of appellant's first issue.

Accordingly, we overrule appellant's fourth issue.

## III.    Lesser Included Offense Instruction

In his fifth issue, appellant contends the trial court erred by denying his request to instruct the jury on the lesser included offense of criminally negligent homicide.

A defendant is entitled to an instruction on a lesser included offense if the proof necessary to establish the charged offense also includes the lesser offense and if the record contains some

evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *See Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser included offense. *Id.* at 383. The evidence must establish the lesser included offense as a valid rational alternative to the charged offense. *Id.* at 385. We review a trial court's decision to submit or deny a lesser included offense instruction for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

The record reflects appellant requested and was denied an instruction on the offense of criminally negligent homicide and that the jury's charge included instructions on both murder and manslaughter. Criminally negligent homicide is a lesser included offense of murder. *See Thomas v. State*, 699 S.W.2d 845, 847 (Tex. Crim. App. 1985).

As to whether there is some evidence that would permit a rational jury to find that, if appellant is guilty, he is guilty only of the lesser offense, such an analysis requires examination of the distinct culpable mental states required for murder and criminally negligent homicide. *See Nikmanesh v. State*, No. 05-16-00363-CR, 2017 WL 2774445, at *7 (Tex. App.—Dallas June 27, 2017, no pet.) (mem. op., not designated for publication). The culpable mental state for murder is "intentional or "knowing," and the culpable mental state for criminally negligent homicide is "criminal negligence." *See* TEX. PENAL CODE ANN. §§ 19.02, 19.05. The penal code defines "criminal negligence" as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

PENAL CODE ANN. § 6.03.

–12–

The record reflects Martinez, who was in the room with appellant that night, testified he thought appellant was firing at someone who was trying to shoot into the room from outside, although he heard no gunshots before appellant began shooting his gun. Martinez later testified he heard a doorknob start rattling before appellant shot at the door. Hernandez testified she spoke to appellant the morning after the shooting and that he told her he shot someone thinking it was his brother who had tried to kill him a couple of months before. Appellant did not testify at trial or offer evidence that, if guilty, he was guilty of acting without awareness of a substantial and unjustifiable risk. Thus, we conclude there was no evidence from which a rational jury could acquit the defendant of murder while convicting him of the lesser included offense of criminally negligent homicide. *See Cavazos*, 382 S.W.3d at 383.

Moreover, as noted above, the jury's charge included an instruction on the lesser included offense of manslaughter. By convicting appellant of murder, the jury concluded appellant intentionally or knowingly caused Gist's death and thus any error in not instructing the jury on criminally negligent homicide was harmless. *See*, *e.g.*, *Masterson v. State*, 155 S.W.3d 167, 172 (Tex. Crim. App. 2005) (concluding any error harmless where defendant was denied instruction on criminally negligent homicide but received instruction on manslaughter and jury convicted him of capital murder).

We overrule appellant's fifth issue.

## IV.    Evidentiary Admissions during the Punishment Phase of Trial

During the punishment phase of trial, the trial court admitted, over appellant's objections, 64 photographs of his tattoos and a photograph of him shirtless and pointing a gun. In his sixth and seventh issues, appellant challenges the trial court's decision to admit these photographs.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). Under the abuse of discretion

standard, the appellate court must uphold the trial court's ruling so long as it is within the zone of reasonable disagreement. *Id.*

A. *Photographs of Appellant's Tattoos*

During the punishment phase of trial, Michael Grice, an investigator with the Dallas County District Attorney's Office, testified he took the 64 photographs of appellant that showed appellant's tattoos. The tattoos depicted the phrase "Tango Blast" and stars, as well as various other images, including dollar signs, a marijuana leaf, persons' names, faces, and the phrase "gangsta to the core." Defense counsel objected to the photographs on the grounds they were not relevant or material and that their prejudicial effect would outweigh their probative value. The trial court overruled these objections and admitted the 64 photographs. Detective Paul Inman with the Dallas Police Department then testified to his 13 years of experience with the Gang Unit in the DPD. After viewing the complained-of photographs of appellant's tattoos, Detective Inman stated that they were definite identifiers of appellant as a member of the gang Tango Blast. The detective stated that "Tango Blast" is the name of a criminal street gang, one that began as a prison gang that was then "brought to the streets," and further testified Tango Blast is known for committing all types of offenses, including narcotic sales and murder. Detective Inman testified the tattoos significant to the gang Tango Blast are stars and tattoos that include the words Tango Blast. He explained the star represented affiliation with the Dallas area because of the city's professional football team's star emblem.

Article 37.07 of the code of criminal procedure controls the admission of evidence at the punishment phase and expressly allows evidence of the defendant's character and history of engaging in other bad acts. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). As a general rule, evidence of a defendant's gang affiliation and the violent activities of that gang are relevant and admissible at the punishment phase to show the defendant's character. *Beasley v. State*, 902

S.W.2d 452, 456 (Tex. Crim. App. 1995); *Lucio v. State*, 05-10-00086-CR, 2012 WL 432249, at *2 (Tex. App.—Dallas Feb. 13, 2012, no pet.) (mem. op., not designated for publication). Through the photographs of appellant's tattoos and Detective Inman's testimony, the State established evidence of appellant's gang membership, evidence of the activities of the gang generally, and evidence of the character and reputation of the gang. Thus, we conclude that the photographs of appellant's tattoos are, indeed, relevant. *See Beasley*, 902 S.W.2d at 457.

Having determined that the photographs of appellant's tattoos are relevant, we are still left to determine whether their probative value substantially outweighed any unfairly prejudicial effect. *See* TEX. R. EVID. 403. Rule 403 of the rules of evidence favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009). The term "probative value" refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "Unfair prejudice" refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Id.* at 880. It is only when a clear disparity exists between the degree of unfair prejudice of the offered evidence and its probative value that Rule 403 is applicable. *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010).

The photographs of appellant's tattoos, especially those that established appellant's gang membership, were obviously unfavorable to appellant, but they were not unfairly prejudicial. The complained-of photographs were part of the State's gang evidence, which was tailored to the purpose allowed by article 37.07. In addition to the photographs and Detective Inman's testimony, the State called Daryl Doty, an investigator with the Dallas County District Attorney's Office, whose testimony regarding appellant's fingerprints, along with the admission of several prior

judgments, established appellant's prior convictions for evading arrest, theft, burglary of a vehicle, unauthorized use of a vehicle, unlawful possession of a firearm by a convicted felon, and possession of heroin with intent to deliver. While the jury sentenced appellant to life in prison, under the circumstances set forth, we conclude the photographs of appellant's tattoos were not so unfairly prejudicial that there was a clear disparity between the degree of prejudice and their probative value. *Jackson v. State*, 05-13-00579-CR, 2014 WL 3955171, at *4 (Tex. App.—Dallas Aug. 14, 2014, no pet.) (mem. op., not designated for publication). Accordingly, the trial court did not abuse its discretion in admitting the photographs of appellant's tattoos.

### B.      *Photograph of Appellant Holding a Gun*

During the punishment phase of trial, appellant testified in his defense that in his entire life, he had not been convicted of any violent crime, that most of crimes have been stealing cars and selling drugs. On cross-examination, the prosecutor offered a photograph of appellant shirtless and holding a small caliber gun. Defense counsel objected that the photograph was not relevant.[3]

As noted above, article 37.07 of the code of criminal procedure expressly allows evidence of the defendant's character and other bad acts. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). Here, appellant admitted to his criminal history but claimed that this criminal history was non-violent. A photograph of him holding a gun was some probative evidence to rebut that claim. *See Abrams v. State*, 14-00-01295-CR, 2002 WL 58822, at *5 (Tex. App.—Houston [14th Dist.] Jan. 17, 2002, pet. ref'd) (not designated for publication) (photographs of appellant relevant to rebut her claims regarding her character and relationship with victim). Accordingly, we conclude the trial court did not abuse its discretion in admitting this photograph.

---

[3] Although appellant also argues on appeal that the photograph was more prejudicial than probative in violation of Rule 403 of the rules of evidence, he did not make that objection at trial. Because his argument on appeal does not comport with the objection he lodged in the trial court, we conclude appellant failed to preserve error on this part of his seventh issue. *See Coe v. State*, 14-10-00929-CR, 2012 WL 1899179, at *23 (Tex. App.—Houston [14th Dist.] May 24, 2012, pet. ref'd) (mem. op., not designated for publication).

We overrule appellant's seventh issue.

**CONCLUSION**

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

170467F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ESTEVAN RENDON LARA, Appellant

No. 05-17-00467-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F15-76060-M.
Opinion delivered by Justice Schenck, Justices Lang-Miers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of July, 2018.