

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00315-CR

_____

ANTHONY WAYNE TANKSLEY, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1648669

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Anthony Wayne Tanksley appeals his conviction for the murder of Anthony Richardson. *See* Tex. Penal Code Ann. § 19.02. Tanksley raises a single issue, arguing that the trial court erred in admitting two videos into evidence. Because the trial court did not abuse its discretion by admitting the videos, we will affirm the judgment.

## I. BACKGROUND

A jury convicted Tanksley for the June 30, 2020, murder of Richardson. Two witnesses, Tanksley's wife Terrie and his ex-girlfriend Cynthia Saleh, gave conflicting accounts of his movements that evening.

Tanksley's wife testified that he was at home with her all evening and never left the house. She particularly recalled that he watched the 10:00 news with her.

According to Saleh, she and Tanksley began the evening around 7:00 by driving separately to buy gas for her car and to buy wine. During her testimony, the State offered two surveillance videos purporting to show, from two angles, the front of the store where Tanksley and Saleh purchased the wine. Tanksley objected to the State "not having a proper predicate laid." The court sustained the objection.

Thereafter, Saleh testified that she had seen the videos, that they showed Tanksley in the parking lot on June 30, and that there were no alterations or deletions. The State again offered the videos into evidence, and Tanksley took Saleh on voir dire. She testified that she did not make the videos, but that she knew the equipment

2

was working because the videos correctly reflected what had happened that evening. Tanksley renewed his objection "to the proper predicate not being laid on [the two videos]." The trial court overruled the objection and admitted the videos.

With the first video playing, Saleh identified her car and Tanksley's car, another person she recognized, and the setting. In the second, she identified herself and Tanksley and confirmed that the events depicted were correct and had occurred on June 30.

She testified that after purchasing the wine, she and Tanksley returned to her house where a family gathering was occurring. She left her car parked at the house and they sat across the street in Tanksley's parked car and drank the wine. Saleh estimated that about ten minutes later, Tanksley exited the car and argued briefly with Richardson, Saleh's cousin, because Richardson was lighting fireworks in the front yard, and then Tanksley left.

Saleh testified that around 10:30 p.m., Tanksley returned to her house, entered the living room where Saleh's and Richardson's family had gathered, addressed Richardson specifically, and then shot and killed Richardson with a pistol.

During the State's later examination of a Fort Worth detective, the detective stated that he had seen the surveillance videos, but that he was not able to identify the vehicles in them. Tanksley did not renew his objection to the authenticity of the videos at that time.

After the State rested its case in chief, Tanksley recalled Saleh to impeach her.[1] He questioned her about her past use of aliases, her previous criminal history, and her text conversations with Tanksley after the shooting. On redirect, the State published one of the storefront videos to the jury again and asked Saleh questions about it; Tanksley did not object or renew his objection.

A jury convicted Tanksley of murder and assessed his sentence at seventy years' confinement.

## II. AUTHENTICATION

Tanksley argues that the trial court abused its discretion by overruling his objection to the authenticity of the storefront surveillance videos the State offered into evidence. Tanksley argues that the videos were not sufficiently authenticated when first admitted, that the quality of the recordings rendered the finding of authenticity an abuse of discretion, and that Saleh's unreliability as a witness rendered the finding of authenticity an abuse of discretion.

### A. APPLICABLE LAW

Rule 901, which governs the authentication requirement for the admissibility of evidence, requires the proponent of an exhibit to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). We review a trial court's ruling on authentication for an abuse of discretion.

---

[1]The initial testimony was on November 14. Tanksley recalled Saleh on November 16.

4

*Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). Under this deferential standard, if the trial court's ruling that a jury could reasonably find the proffered evidence to be authentic is at least within the zone of reasonable disagreement, an appellate court must uphold the court's admissibility decision. *Id.*

The evidence necessary for a preliminary showing of authenticity has been described as a "liberal standard of admissibility." *Id.* at 849 (quoting *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015)). The proponent must only produce sufficient evidence that a reasonable jury could properly find genuine. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Conclusive proof of authenticity is not required for admission. *Fowler*, 544 S.W.3d at 848. It is ultimately the jury's role to determine whether an item of evidence is indeed what its proponent claims it is. *Id.* at 848–49; *Butler*, 459 S.W.3d at 600.

Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence. *Tienda*, 358 S.W.3d at 638; *see Butler*, 459 S.W.3d at 602. Authenticity may be established with evidence of "distinctive characteristics and the like," including "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Tex. R. Evid. 901(b)(4).

A video may be authenticated by a witness who personally witnessed the events depicted, without the video's proponent presenting evidence from the equipment's

5

owner or evidence as to how it was recorded, the equipment that was used, or whether the equipment was working properly. *Shaw v. State*, No. 02-21-00177-CR, 2022 WL 17037416, at *5–6 (Tex. App.—Fort Worth Nov. 17, 2022, pet. ref'd) (mem. op., not designated for publication) (affirming trial court's admission of surveillance video after witness who did not make the video confirmed that it accurately depicted the events that occurred, although the footage was discolored).

## B. Discussion

Saleh testified that she had seen the videos and recognized the events depicted in them, she identified people depicted in them, and she knew that they correctly represented the events of June 30, 2020. Given Saleh's testimony as to her personal knowledge of the distinctive characteristics of the depicted events—including the appearance, contents, and substance of the videos—the trial court did not abuse its discretion by overruling Tanksley's objection to the videos' authenticity. *See id.*

Tanksley argues that "the video itself was of such poor quality that Appellant could not be identified." However, he made no such objection before the trial court, so no error was preserved on appeal for the specific reason of the video's quality. *See* Tex. R. App. P. 33.1(a)(1)(A); *Cf. McClinton v. State*, No. 02-02-435-CR, 2003 WL 22725543, at *2 (Tex. App.—Fort Worth Nov. 20, 2003, no pet.) (per curiam) (mem. op., not designated for publication) (holding that arresting officer's testimony was sufficient to establish the authenticity of video recorded by officer's in-car camera even though the film quality was poor and the frames "jump[ed]").

Tanksley also argues that, because "Saleh's credibility was thoroughly impeached at trial" when he recalled her two days after the videos were admitted, the initial finding of authenticity was an abuse of discretion. However, Tanksley also made no such objection before the trial court, so no error was preserved for appeal for the specific reason of Saleh's credibility. Tex. R. App. P. 33.1(a)(1)(A).

## III. CONCLUSION

Because the trial court did not abuse its discretion by determining that the videos admitted were properly authenticated, we overrule Tanksley's only issue and affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 27, 2025