

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00057-CR

_____

JUSTIN THOMAS LEHRMAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR16701

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Justin Thomas Lehrman raises a single issue challenging his three felony convictions: he asserts that the trial court abused its discretion by admitting recordings of four jail phone calls. Lehrman argues that the recordings were not properly authenticated because the sponsoring witnesses were insufficiently specific as to the date and time that the recorded calls occurred. But the State did not claim that the calls had occurred at a precise moment in time, and it was required to show only that the recordings were what it claimed them to be. *See* Tex. R. Evid. 901(a). Accordingly, we will affirm.

## I. Background

Lehrman pleaded guilty to two counts of aggravated assault with a deadly weapon and one count of animal cruelty. *See* Tex. Penal Code Ann. §§ 22.02(a)(2), 42.092(b)(2). During the jury trial on punishment, the State offered evidence of four recorded phone conversations that Lehrman had while he was in jail—one call with his mother, another with both his mother and father, and the final two with his girlfriend.[1]

Before the recordings were admitted into evidence, Lehrman's mother and girlfriend contextualized them. They described the nature and frequency of their

---

[1]The two recorded calls between Lehrman and his girlfriend were saved on the same USB drive, and the USB drive was admitted into evidence as a single exhibit. Likely for this reason, Lehrman refers to the two call recordings as one.

phone conversations with Lehrman, testified that they were familiar with the specific recordings being offered into evidence, identified the participants in the recorded calls, confirmed that the recordings were fair and accurate reflections of their conversations, and gave a rough estimate of when the calls had occurred—"[w]ithin the last month" for Lehrman's calls with his mother and "like two weeks ago" for his calls with his girlfriend. Nonetheless, Lehrman objected to the recordings' admission, claiming there was a "lack of validation" as to the "date and time" of the recorded conversations. The trial court overruled Lehrman's objections and admitted the recordings.

After listening to these four recordings and hearing the remainder of the evidence, the jury assessed the maximum period of confinement (plus fines) for each of Lehrman's crimes.[2] *See id.* §§ 12.33, 12.34, 22.02(b), 42.092(c-1).

## II. Discussion

In his sole appellate issue, Lehrman challenges the trial court's admission of the four recordings, which he claims were not properly authenticated under Texas Rule of Evidence 901.[3]

---

[2]The jury assessed 20 years' confinement with a $2,000 fine for each of Lehrman's two second-degree felony aggravated assault offenses, *see* Tex. Penal Code Ann. §§ 12.33, 22.02(b), and it assessed 10 years' confinement with a $10,000 fine for his third-degree felony animal cruelty offense, *see id.* §§ 12.34, 42.092(c-1).

[3]At trial, Lehrman did not explain why he believed the "date and time" were crucial to the recordings' admissibility; he neither expressly mentioned Rule 901 nor situated his objections within the context of authentication challenges. Nonetheless,

## A. Standard of Review and Governing Law

Rule 901 requires an item proffered as evidence to be "authenticat[ed] or identif[ied]," meaning that the proponent must show that "the item is what the proponent claims it is." Tex. R. Evid. 901(a). Whether the item is in fact authentic is ultimately for the jury to decide, though; its admission into evidence "merely requires some evidence sufficient to support a finding that [the proffered item] is what the proponent claims." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018); *see* Tex. R. Evid. R. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (noting that "the trial court itself need not be persuaded that the proffered evidence is authentic" to admit it).

Not only is this a "liberal standard of admissibility," but our review of its application is deferential. *Fowler*, 544 S.W.3d at 848–49; *Tienda*, 358 S.W.3d at 638. We review a trial court's decision to admit evidence under Rule 901 for an abuse of discretion. *Fowler*, 544 S.W.3d at 848–49; *Tienda*, 358 S.W.3d at 638. The trial court is given "considerable latitude," and if its ruling is "at least 'within the zone of

---

because the substance of Lehrman's present authentication argument mirrors his trial court objections to the recordings' "date and time," we assume without deciding that the "date and time" trial court objections were sufficient to preserve the authenticity issue. *Cf.* Tex. R. App. P. 33.1(a)(1)(A) (stating that, "[a]s a prerequisite to presenting a complaint for appellate review," a party must timely raise the complaint in the trial court and "stat[e] the grounds for [it] . . . with sufficient specificity to make the trial court aware of the complaint").

reasonable disagreement,' . . . [then we] should not interfere." *Fowler*, 544 S.W.3d at 848; *Tienda*, 358 S.W.3d at 638.

## B.    No Abuse of Discretion

Lehrman asserts that the trial court abused its discretion by admitting the recordings because, he claims, his mother and girlfriend did not identify the exact "date and time" that the calls occurred. According to Lehrman, such "date and time" testimony was necessary to authenticate the recordings under Rule 901. *See generally* Tex. R. Evid. 901. But Rule 901 requires no such thing.

Rule 901 requires a showing that "the item is what the proponent claims it is"—no more, no less. Tex. R. Evid. 901(a). This "can be accomplished in myriad ways," *Butler v. State*, 459 S.W.3d 595, 601 (Tex. Crim. App. 2015), and Rule 901 gives a nonexclusive list of examples. Tex. R. Evid. 901(b) (emphasizing that the methods listed "are examples only—not a complete list"); *cf. Fowler*, 544 S.W.3d at 849 ("[E]ven though the most common way to authenticate a video is through the testimony of a witness with personal knowledge who observed the scene, *that is not the only way*."). But none of Rule 901's examples—nor anything else in Rule 901—mandate the proponent's identification of the precise moment in time that the evidence was created or that the call was recorded. *See* Tex. R. Evid. 901. Or, to put a finer point on it, nothing in Rule 901 mandates a showing of the evidence's precise timing unless the proponent represents that the evidence reflects a precise moment in time, in

which case the proponent must show that the item is what it claims to be. *See* Tex. R. Evid. 901(a).

The State made no such representations about the four challenged recordings. It represented Lehrman's calls as having occurred (1) while he was in jail, (2) with certain individuals, and (3) within certain rough time frames. And Lehrman's mother and girlfriend testified to those facts, (1) confirming the calls' jailhouse context; (2) identifying the calls' participants; and (3) estimating that the calls had occurred "[w]ithin the last month" and "like two weeks ago," respectively. Rule 901 contemplates authentication through just such testimony, i.e., through the testimony of witnesses with personal knowledge of the recorded conversations—no more, no less. Tex. R. Evid. 901(b)(1); *see Brice v. State*, No. 02-19-00462-CR, 2021 WL 1229961, at *1–2 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op., not designated for publication) (holding recording authenticated based on witness's participation in and "personal knowledge of the call" despite witness's "testimony that he did not know the name of the 911 operator [on the call] and had never had physical custody of the recording"); *see also Paz v. State*, No. 08-23-00296-CR, 2024 WL 3544615, at *3 (Tex. App.—El Paso July 25, 2024, no pet.) (mem. op., not designated for publication) (holding recording authenticated and explaining that, "[b]ecause [the sponsoring witness] made the . . . call, she had personal knowledge of the call and of what the State had claimed it to be").

6

Lehrman does not dispute that his mother and girlfriend had personal knowledge of their respective phone calls with him. Nor does he contend that the State presented the recorded calls as something other than what his mother and girlfriend testified that they were. And while he argues that—despite this—Rule 901 still required the State to pinpoint the calls' precise timing, he has not identified anything in Rule 901 to support that position, nor has he cited any case law interpreting Rule 901 in that manner. *See Paez v. State*, No. 04-18-00828-CR, 2019 WL 4280070, at *1–2 (Tex. App.—San Antonio Sept. 11, 2019, no pet.) (mem. op., not designated for publication) (holding jail call recordings authenticated and reiterating rule that "[t]he proponent of [the] evidence does not need to rule out all possibilities inconsistent with authenticity[] or to prove beyond any doubt that the evidence is what it purports to be"); *cf. Tienda*, 358 S.W.3d at 645–47 (acknowledging that State's evidence circumstantially authenticating MySpace pages did not rule out the "possibility that the appellant was the victim of some elaborate and ongoing conspiracy" but holding that jury could assess the likelihood of such "alternate scenario" and that the MySpace pages were sufficiently authenticated for admission "once the State had produced a prima facie showing that it was the appellant . . . who [had] created and maintained the[m]").

Because the State was not representing that the recorded jail calls occurred at a precise moment in time, it was not required to offer evidence that the recordings were made at a more precise time than it claimed. *See* Tex. R. Evid. 901(a); *cf. Griffinwhite v.*

7

*State*, No. 05-19-00317-CR, 2020 WL 4880156, at \*4–5 (Tex. App.—Dallas Aug. 20, 2020, no pet.) (mem. op., not designated for publication) (holding that, when "there was no question" that Facebook Live video depicted appellant's commentary on the murder, "determining the remoteness of the recording to the time of the murder was not necessary" given sponsoring witness's approximation of time that video had been posted and given video's characteristics that were consistent with Facebook Live); *Jones v. State*, 80 S.W.3d 686, 689 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding audio recording was sufficiently authenticated when informant identified some but not all voices and declining to "read into [Rule 901] a requirement that each person [in the audio recording], no matter how irrelevant to the case, be identified by name."). And given that Rule 901 is a "liberal standard" for admissibility anyway, *Fowler*, 544 S.W.3d at 849, and that the trial court's ruling on this standard need only fall within the zone of reasonable disagreement, *id.* at 850, we would be hard-pressed to conclude that the trial court abused its discretion by admitting the recordings over Lehrman's "date and time" objections.

We overrule Lehrman's sole issue.

8

### III. Conclusion

Having overruled Lehrman's sole issue, we affirm the trial court's judgments of conviction. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 12, 2025