

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00030-CR

_____


JEANIE MARIE FOWLER, Appellant

V.

THE STATE OF TEXAS, Appellee


_____

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR18-229

_____


Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

When Ralph Neill became concerned about the low balance in the bank account of his elderly mother, Bettie Neill, he began reviewing the purchases made on her Bank of America debit card (the BoA Card). When he determined that the purchases made at the local Walmart were too frequent and often above $100.00, he began monitoring the bank account. Based on his monitoring, he concluded that Bettie's long-time caregiver, Jeanie Marie Fowler, was making unauthorized transactions with the BoA Card.

Subsequently, Fowler was charged with, and a Rusk County jury convicted her of, credit or debit card abuse of an elderly person.[1] In accordance with the jury's recommendation, the trial court sentenced Fowler to ten years' imprisonment, suspended the sentence, and placed her on community supervision for five years. On appeal, Fowler complains that insufficient evidence supported her conviction and that the trial court erred when it admitted thirty-one videos of credit/debit card transactions at Walmart. Because we find that (1) sufficient evidence supported Fowler's conviction and (2) the extraneous-offense complaint has been forfeited, we affirm the trial court's judgment.

*(1) Sufficient Evidence Supported Fowler's Conviction*

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c).

2

Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id*. (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985))). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id*. (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id*. (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id*. (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018) (citing *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id*. at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Malik*, 953 S.W.2d at 240).

Under the statute and the indictment, the State was required to prove beyond a reasonable doubt that, on or about August 8, 2017,[2] Fowler, (1) with intent to fraudulently obtain a benefit, (2) presented or used a debit card, being Visa number xxxx-xxxx-xxxx-xxxx,[3] (3) with knowledge that (a) the card had not been issued to her and (b) was not used with the effective consent of the cardholder, Bettie Neill, (4) who was sixty-five years of age or older. *See* TEX. PENAL CODE ANN. § 32.31(b)(1)(A), (d). Fowler challenges the sufficiency of the evidence supporting only the finding that her use was without the effective consent of the cardholder. She argues that, because Bettie testified only that she did not give Fowler permission to buy children's toys, children's clothing, men's clothing, or women's bras, but did not specify a particular date, the State did not show that the use of the BoA Card on August 8, 2017, was without the effective consent of the cardholder. We disagree.

---

[2]Although the indictment alleged that the offense occurred on or about September 22, 2017, the State announced before trial, without objection, that it would rely on a transaction that occurred at Walmart on August 8, 2017. In accordance with the announcement, the trial court's jury charge instructed the jury that it could only find Fowler guilty if it found that she presented or used the debit card on or about August 8, 2017.

[3]This was the BoA Card.

Patricia Neill, Bettie's daughter-in-law, testified that the BoA Card was issued to Bettie on her Bank of America bank account. She testified that Bettie had two debit cards, one issued on her bank account at Texas Bank (the Texas Bank Card) and the BoA Card. The caregivers for Bettie were given permission to use the BoA Card for purchases of items needed by Bettie only if Bettie was with them. If they needed to purchase something for Bettie when she was not with them, they could only use the Texas Bank Card. She explained that the reason for this arrangement was that the Bank of America account had a lot of money in it, while the Texas Bank account only had a little. When Fowler came to work as a caregiver for Bettie, she was given these same restricted permissions to use the BoA Card and the Texas Bank Card.

In her voluntary recorded statement to the police that was played for the jury, Fowler explained that, when she would go to the store with Bettie, both of them would go inside, and Bettie would be on a motorized cart. When they went together, Fowler would make purchases on the BoA Card. However, if Fowler went to the store alone to purchase items for Bettie, she always used the Texas Bank Card, per Patricia Neill's orders. Her statement confirmed her understanding of the differences in account balances between the accounts linked to the respective cards. She denied that she ever took either card without Bettie's permission or knowledge. She affirmed that any store videos would show Bettie was with her anytime she used the BoA Card and that there would be none that did not show Bettie with her.

The State introduced thirty-one videos obtained from Walmart that were associated with transactions made with the BoA Card. The videos were dated on various dates from July 23, 2017, through September 24, 2017, and showed the register used, the person using the BoA

Card, the items purchased, and to a limited extent, any other person in the vicinity of the register. Fowler was identified as the person making the transactions on all but two of the videos. Although Bettie could be seen near Fowler in two, and possibly three, of the videos, she was not seen in the remainder of the videos. Many of the videos also showed Fowler receiving cash back. The video of the August 8, 2017, transaction showed Fowler purchasing a few items of women's clothing, two brassieres, and several items of children's clothing.

Bettie testified that when Fowler was working for her she bought most of her groceries at Kroger, and she bought some groceries and clothing at Walmart. She testified that she never gave Fowler permission to buy toys, children's clothing, men's clothing, or brassieres.

At trial, Fowler testified that Bettie was forgetful and had to be reminded of specifics. She testified that she bought the boy's clothes shown in the August 8 video because Bettie told her to buy Fowler's son some school clothes. She maintained that the brassieres were for nursing and that she had bought them for Bettie's granddaughter, Cary. She also testified that the shorts and Capri jeans purchased on that date were for Bettie. Fowler admitted that Bettie was not with her that day but maintained that all the purchases that day were made with Bettie's permission and at her direction. She also testified that Bettie liked to get cash back so she could have money to spend on things without her son's knowledge. Fowler also maintained that, if Bettie was not seen in the videos, it was either because she had remained in the car due to a lack of motorized carts or because the checkout lanes were too narrow, prompting Bettie to wait for her near the benches at the front of the store.

It was undisputed that Fowler had consent to use the BoA Card only when Bettie accompanied her and only for those purchases authorized by Bettie. Regarding the purchases made by Fowler with the BoA Card on August 8, Fowler admitted that Bettie was not with her. In addition, although Fowler testified that she had Bettie's permission and direction to purchase the boy's clothing and brassieres, Bettie testified that she had never given Fowler permission to purchase those items. The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Williamson*, 589 S.W.3d at 297 (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). Hence, the jury could have discounted Fowler's testimony, especially considering the variance between her voluntary statement and her trial testimony, instead believing Bettie's testimony regarding the non-permitted items included in the August 8 purchases.

Based on this record, we find that any reasonable jury could have found beyond a reasonable doubt that Fowler did not have the effective consent of Bettie to use the BoA Card to make purchases at Walmart on August 8, 2017. Therefore, we find that legally sufficient evidence supported Fowler's conviction.[4] We overrule this issue.

*(2) The Extraneous-Offense Complaint Was Forfeited*

Fowler also complains that the trial court reversibly erred in admitting the Walmart videos in the guilt/innocence phase of the trial in violation of Rule 404(b) of the Texas Rules of

---

[4]The recited evidence also showed that Fowler purchased the boy's clothing for her son, that she knew the debit card was not issued to her, that she used the debit card, and that the debit card was issued to Bettie. Other evidence at trial showed that Bettie was eighty-eight years of age at the time of the offense. A copy of the debit card was also admitted into evidence. Consequently, we find legally sufficient evidence supported the conviction.

7

Evidence. Rule 404(b)(1) of the Texas Rules of Evidence provides that evidence of an extraneous "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, this same "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

A trial court's erroneous admission of an extraneous offense constitutes unconstitutional error and must be disregarded if it does not affect the defendant's substantial rights. *Coleman v. State*, 188 S.W.3d 708, 726 (Tex. App.—Tyler 2005, pet. ref'd) (citing TEX. R. APP. P. 44.2(b)). "Substantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Id.* (quoting *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (citations omitted)).

In the "Application of Law to Facts" section of her brief on this issue, Fowler merely sets out a series of events that took place at trial with no analysis of how those events showed error on the part of the trial court. Rule 38.1(h) of the Texas Rules of Appellate Procedure requires that a brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Merely providing a series of events with no analysis as to how those facts constitute error by the trial court does not satisfy this requirement. In addition, Fowler did not make any harm analysis in her brief under this issue. An issue is inadequately briefed when an "appellant does not address the question of

8

whether the alleged error . . . was harmless." *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *see Wilson v. State*, 473 S.W.3d 889, 901 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Sierra v. State*, 157 S.W.3d 52, 64 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007)) (extraneous-offense issue waived because not adequately briefed by failing to address how appellant was harmed by the trial court's error). Consequently, Fowler has forfeited this complaint.[5] We overrule this issue.

For the reasons stated, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     October 14, 2020
Date Decided:       November 17, 2020

Do Not Publish

---

[5]Even if we reached the merits of this issue, any error would be harmless. In her brief, Fowler specifically points to the admission of the thirty-one Walmart videos admitted by the trial court and the State's argument in which it invited the jury to look at all the videos. However, on appeal, Fowler does not complain of the admission of the testimony of Jarrod Finley, a detective for the Henderson Police Department, who testified as to who was shown in each video, what was purchased, and whether the purchaser received any cash back.

"Admission of inadmissible evidence is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial." *Broderick v. State*, 35 S.W.3d 67, 75 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Poole v. State*, 974 S.W.2d 892, 899 (Tex. App.—Austin 1998, pet. ref'd)). Likewise, when the same evidence comes in through other sources that are not complained about on appeal, any error in admitting the evidence challenged on appeal is harmless. *Heidelberg v. State*, 112 S.W.3d 658, 664 (Tex. App.—Houston [1st Dist.] 2003) (op. on rehearing), *aff'd*, 144 S.W.3d 535 (Tex. Crim. App. 2004).