

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00038-CR

JAMEL MCLELLAND FOWLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 30456

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

Jamel McLelland Fowler was convicted of theft of a Kawasaki mule all terrain vehicle (ATV) valued at $1,500.00 or more, but less than $20,000.00.[1]  On appeal,[2] Fowler challenges the sufficiency of the evidence, claims error in the admission of extraneous offense evidence, and claims reversible error by the trial court in admitting an unauthenticated video exhibit into evidence.  While we find the evidence sufficient to sustain Fowler's conviction, we also find that the trial court reversibly erred in admitting an unauthenticated video exhibit into evidence; consequently we reverse the trial court's judgment and remand to the trial court for a new trial.

## I.      Trial Court Proceedings

In 2014, Fowler was charged by three separate indictments with three separate crimes.  In the indictment which led to the conviction on appeal in this matter, Fowler was accused of stealing the ATV from Paul Blassingame.  The other two indictments alleged burglaries of buildings.  In one of the other charges, Fowler was accused of breaking into a building owned by William Martin and stealing various items (Burglary Case No. 1);[3] in the other, Fowler was charged with burglarizing a building and stealing a trailer (Burglary Case No. 2).[4]  All three indictments were

---

[1]*See* Act of May 29, 2011, 82d Leg., R.S., ch. 1234, § 21, 2011 Tex. Gen. Laws 3302, 3310 (amended 2015) (current version at TEX. PENAL CODE § 31.03(e)(4)(A) (West Supp. 2016)).

[2]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

[3]After the jury returned a guilty verdict in Burglary Case No. 1, Fowler moved to set aside the jury's verdict, and the trial court granted that motion.  Fowler subsequently amended his request to a motion for new trial, which the trial court also granted.  The trial court ultimately entered a judgment of acquittal in Burglary Case No. 1.

[4]The State dismissed Burglary Case No. 2 after three days of testimony.

returned in Hunt County. The State moved to try the cases together, alleging that they "constitute[d] the same criminal episode because they [were] the repeated commission of similar acts." Fowler did not oppose consolidation of the three cases.

## II. The Evidence

The facts of the three alleged offenses are intertwined and will have some bearing on the issues Fowler presents in this appeal. As previously stated, this appeal is of Fowler's conviction of the theft of the ATV. Blassingame testified that the ATV had been located on property he owned in Hunt County, which he visited often. In November 2014, he went to that property, where he discovered that the ATV was missing, a fact that he duly reported to the Hunt County Sheriff's Office as a theft. Law enforcement officers in Royse City of neighboring Rockwall County found the ATV on December 6, 2014, while investigating a burglary at a concrete supply business. The ATV was identified by its vehicle identification number and returned to Blassingame.

The ATV was found hidden in a wooded area beyond a field on property owned by Lattimore Materials,[5] a ready-mix concrete business that had suffered a series of burglaries over the months preceding the discovery of the ATV. While investigating one of the burglaries that occurred at Lattimore Materials in December 2014, Royse City policemen noticed tire tracks (which they believed were made by an ATV) which led from the building that had been burglarized to a tree line; just beyond the tree line was the copse of trees in which the ATV was hidden. There was trash scattered on the ground around the ATV, among which was a receipt from a Family

---

[5]At the time of the burglaries, the Lattimore Materials facility located on the subject property was non-operational. Duane Wetteland, the area manager for Lattimore Materials, described other facilities owned by the company and explained that business needs determined whether the facility on the property at issue was operational or not. Wetteland testified that he periodically checked on the facility when it was non-operational.

Dollar store that included the time and date of its issuance. Further, within fifteen feet or so of the ATV, the policemen found packaging in which a box cutter had been located, and a box cutter was one of the items listed on the Family Dollar store receipt. Royse City Police Officer Jaime Torrez took the receipt to the store that had issued it and was able to view the store's surveillance video recording showing what appeared to be the purchase memorialized by the receipt. The store was unable to duplicate the recording or render it to a format Torrez could take with him, so he and an officer he was training used Torrez' department-issued camera to record the surveillance footage as it played on the store's video monitor. The footage's date and time information corresponded generally to the date on the receipt. Particularly of note to the State's case, the recording showed a man entering the store then completing a purchase, and it was the State's theory at trial that that man was Fowler.

In addition to those circumstances, in the weeks leading up to the December discovery of Blassingame's ATV, officers had found a blue Nissan Xterra vehicle in the area under suspicious circumstances. On November 3, 2014, at about 1:45 a.m., Royse City Police Sergeant Ryan Curtis and Rockwall County Deputy Brad Dick found the truck parked on a dirt road behind some industrial businesses in a poorly lit area.[6] Virginia Cox (eventually named as a co-defendant with Fowler in one or more of his indictments) was sitting in the Xterra. Cox's explanation to the law enforcement officers of her whereabouts was that she and her boyfriend had run out of gasoline and that he had gone back to a gas station for fuel. Because one of the businesses (Four Brothers,

---

[6]Curtis described the area where the Xterra was parked as "a dirt road that you really can't even travel through." He continued, "I mean, I'm unaware of any vehicles being able to travel through it for years."

4

a mower and tractor dealer) behind which Cox's vehicle was parked had been the victim of multiple burglaries in the past, Curtis was suspicious of Cox. Curtis saw several sets of bolt cutters in the Xterra[7] and got another police officer to go to the nearest gas station. That officer encountered no one purporting to be in search of gasoline for a stalled vehicle. When Curtis asked Cox to attempt to start the vehicle, it started with no problem (thereby casting doubt on Cox's story that it had no fuel).

At about 6:00 a.m. that same day, Royse City Police Officers William Potter and Tim West observed the same blue Xterra in another part of Royse City parked on the side of a local county road. As previously, the vehicle was occupied only by Cox, and when she was questioned by the policemen, she made reference once again to a male companion. Later that morning, Potter and West again encountered the Xterra, this time containing both Cox and Fowler. Between these two encounters, Potter had responded to a call regarding an alleged theft at the Four Brothers mower and tractor dealership. The dealership representatives called Potter's attention to three mowers, each of which had their gasoline caps removed and none of which held any gasoline in their tanks.[8]

After that, Potter returned to the Xterra and questioned Fowler about involvement in any theft of gasoline, which Fowler denied. From our reading of the record, Potter took no further

---

[7]The issue of consent to the search of the vehicle was not challenged by Fowler at trial or in this appeal.

[8]Potter actually said the gas cans were empty; from the context, he likely was referring to the mowers' tanks, but he never testified that anyone at Four Brothers told him there had been gas in the tanks the night before. Nonetheless, Potter did testify that he was responding to a report of stolen gasoline, and he left the dealership telling "management that [he] had a suspect and that [he] was going to go back and talk with them."

action with respect to Fowler after that point.[9] There was another encounter between West and Potter, on the one hand, and Fowler and Cox, on the other, on either November 3 or 10 wherein Fowler allowed the officers to look inside the Xterra. At that time, the officers noticed that there were three bolt cutters, binoculars, and a pry bar inside the vehicle. When questioned about those items, Fowler attempted to explain the presence of the tools in his vehicle by saying he was an electrician. That explanation failed to quell West's suspicions of Fowler because (as West explained) he ran a construction company and was aware of the tools and equipment used by electricians, and those items would not ordinarily be used by electricians.[10] This encounter occurred near Lattimore Materials, which had suffered multiple recent burglaries.

Testimony about the burglaries at Lattimore Materials revealed that a part of the method of operation of the burglars was to sever cables or heavy wires and remove them from the site. In addition, the burglars had cut padlocks on the gates of the premises more than once. While investigating one of the burglaries, Torrez found three sets of bolt cutters near some of the cut cables, and he suspected that the bolt cutters had been used to cut the cables.

---

[9]A recording of that encounter, recorded via the dash camera of Potter's police car, was admitted into evidence. There was much discussion and argument over the recording. The exhibit provided to this Court has several files; there are three video recordings, each less than thirty seconds in duration, which contain no audio. The final file is an audio/video recording that is two minutes and twenty-eight seconds in duration which captured Potter asking Fowler about any involvement in theft of gasoline from Four Brothers. Potter suggested during this exchange that the business had surveillance videos. When Fowler stated that he was done talking with the officer, the video ended. From the discussions at the bench by the parties and the trial court, it appears that this audio/video recording was played for the jury.

[10]Fowler's objection to this testimony was sustained, but he did not request an instruction to disregard.

6

## III.    Store's Surveillance Video Insufficiently Authenticated

Fowler contends that because the video surveillance footage from the Family Dollar store was not properly authenticated, the trial court erred by admitting it into evidence.  We agree.

The challenged video recording was a copy of another recording from a surveillance camera at the Family Dollar store.  The Family Dollar store receipt found by Torrez near the stolen ATV evidencing the sale of a box cutter (the packaging of which had likewise been found near the ATV) revealed the time and date of its issuance.  Torrez took the receipt to the issuing Family Dollar store and discovered that the store had a surveillance video recording from the date and time the receipt was issued.  The surveillance video recording captured the image of a man the State alleged to be Fowler entering the Family Dollar store a few minutes before the time and date set out on the receipt found by Torrez near the ATV, then, several minutes later, buying items.  However, the video made by the Family Dollar store was not saved in a format that could be copied, so Torrez (and another officer who was accompanying him) focused Torrez' police-department-issued video camera on the screen displaying the Family Dollar video and made a video recording of a portion of the Family Dollar surveillance video.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  TEX. R. EVID. 901(a).  "Video recordings or motion pictures sought to be used in evidence are treated as photographs and are properly authenticated when it can be proved that the images reflect reality and are relevant."  *Cain v. State*, 501 S.W.3d 172, 174 (Tex. App.—Texarkana 2016, no pet.) (citing *Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988)).

7

"In ruling on the admission or exclusion of photographic evidence, the trial court is accorded considerable discretion." *Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988). "The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). "[A]uthentication or identification . . . . is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." TEX. R. EVID. 901(a).

In *Kephart v. State*,[11] Kephart was charged with possession of illegal drugs. At her trial, the State introduced a video recording acquired when police searched a motel room occupied by two people, neither of whom was Kephart. Kephart appeared in the video, incrementally displaying greater and greater degrees of intoxication. Beneficial to the State's case, there was also footage of Kephart talking with one of the people in whose motel room the video was discovered. "On the table in the video is a white substance and a baggie with what appears to be marihuana." *Kephart*, 875 S.W.2d at 320. The video also contained an audible conversation between Kephart and one of the motel room occupants. *Id.*

The Texas Court of Criminal Appeals ruled that the video had not been sufficiently authenticated and that the trial court committed harmful error by admitting it to evidence. While a police officer testified that the video was an accurate copy of the original,[12] "he had no personal

---

[11] *Kephart v. State*, 875 S.W.2d 319 (Tex. Crim. App. 1994) (per curiam), *overruled on other grounds by Angleton v. State*, 971 S.W.2d 65 (Tex. Crim. App. 1998).

[12] The original tape from the motel room "was of poor quality and had been 'eaten' by a VCR." *Kephart*, 875 S.W.2d at 320 n.2.

knowledge of where or when the tape had been made" and "could not also state that the tape accurately represented the actual scene or event at the time it occurred." *Id.* at 322–23.

The State's copy of the Family Dollar surveillance video falls victim to the same analysis as the video in *Kephart*. Torrez adequately demonstrated that the recording he made of the store's surveillance monitor was a duplicate copy of the relevant part of the original surveillance recording. However, there was no evidence presented to show that the store's surveillance video was what the State purported it to be (an accurate recording or rendition of events in that particular store on a particular day at a particular time). While the date and time on the lower center part of the screen on Torrez' recording of the store recording generally corresponds with the date and time on the receipt found near the ATV, there was no evidence that the surveillance system was working properly on the date in question, that its on-screen clock was correctly set and functioning properly, or that the original accurately portrayed the events that purportedly occurred at the time and on the date shown in the video recording.[13] Without such proof, there was no showing that the store's video recording was made on the same day as the receipt or that it accurately portrayed what the State alleged that it portrayed. Because the Family Dollar's original surveillance recording was not properly authenticated, the trial court abused its discretion in admitting the video recording into evidence.

---

[13]*Cf. Page v. State*, 125 S.W.3d 640, 648–49 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (finding sufficient evidence of authentication where the sponsoring witness explained how the store's digital camera system worked, testified that he obtained the recorded images from the system shortly after the robbery there at issue, reviewed the recording with the police, copied the recording onto a videotape, gave the videotape to the officers, viewed the videotape before trial, and concluded that it had not been altered); *see also Standmire v. State*, 475 S.W.3d 336, 344 (Tex. App.—Waco 2014, pet. ref'd) (suggesting criteria to consider when analyzing authentication of security video "such as those used after hours in convenience stores and freestanding automatic teller machines").

9

We must now assess the error in admitting the evidence to determine whether it harmed Fowler, i.e., whether it affected his substantial rights. "Generally, errors resulting from admission or exclusion of evidence are nonconstitutional." *Gotcher v. State*, 435 S.W.3d 367, 375 (Tex. App.—Texarkana 2014, no pet.) (citing *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007)). We see nothing in this circumstance that would elevate the erroneous admission of the video to the level of a constitutional violation of Fowler's rights. *See* TEX. R. APP. P. 44.2(b). As nonconstitutional error, harm resulted if Fowler's substantial rights were affected. *See Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002); TEX. R. APP. P. 44.2(b). "[A] substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). In making our assessment, we consider everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Essentially, the State's case can be outlined as follows:

1.      Blassingame reported his ATV stolen.

2.      The ATV, identified by its vehicle identification number, was found (after investigating a seemingly unrelated burglary).

3.      Within feet of the ATV was a receipt from a Family Dollar store which indicated that a box cutter had been purchased at a certain time and date. A box cutter package was also discovered nearby.

4.      Law enforcement officials took the Family Dollar store receipt to the issuing store and were shown a security surveillance video recording of the store which corresponded to the time and date on the receipt.

10

5.      Officers recorded sections of the security video recording which they believed corresponded with the receipt's information and used this to identify Fowler as a subject.

6.      The officers' video recording of the Family Dollar video recording was presented as evidence in trial.

7.      Presumably, the jury compared the person on the video with Fowler's appearance at trial and other evidence presented and concluded that Fowler was the person who had purchased the box cutter and dropped the paper evidence of the purchase near the stolen ATV.  This tied Fowler to the stolen ATV.

Here, the error undoubtedly affected Fowler's substantial rights and was, therefore, harmful.  The Family Dollar video recording was the evidence linking Fowler to the stolen ATV.  We, therefore, sustain this point of error.

## III.    Sufficiency of the Evidence

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented.  *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

11

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the measure known as the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

"[A] conviction can be supported solely by circumstantial evidence." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). As the Court of Criminal Appeals has stated,

> [E]vidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant. Moreover, the evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence.

*Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990).

Moreover, in performing a review of the sufficiency of the evidence, we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted. *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004). Consequently, we consider the key evidence of Fowler's guilt—the Family Dollar video recording—in our sufficiency analysis, even though, as we have already concluded, that evidence was improperly admitted at trial.[14]

In this case, the evidence was sufficient for a rational jury to have found beyond a reasonable doubt that Fowler stole Blassingame's ATV. To reiterate that evidence, we note that the stolen ATV was found under suspicious circumstances, hidden in a wooded area near a

---

[14]We frankly acknowledge that, absent this video recording, the evidence would be legally insufficient to support Fowler's conviction, its existence being vital to the conviction.

12

business which had sustained multiple burglaries, and there was evidence that bolt cutters had been used in those burglaries. Multiple bolt cutters were found in Fowler's truck. After one of the burglaries, ATV tracks were found leading off through a field, and just beyond where the tracks ended, officers found Blassingame's ATV. Fowler and/or the truck Fowler was driving at the time were found a few times in odd hours and under suspicious circumstances in the neighborhood of that business. The Family Dollar receipt found near the stolen ATV was linked to a transaction at the store. Most importantly, the Family Dollar video depicted a person making the transaction that was linked to the ATV whom the jury could have easily determined was Fowler.[15] This evidence is legally sufficient to support Fowler's conviction. We, therefore, overrule this point of error.[16]

---

[15]Fowler argues that the trial court realized it had erred in admitting some evidence and "tried to correct it during trial." Fowler argues, "[T]he court made statements to the effect that he allowed certain evidence in because the State made representations about what the evidence would be that did not turn out to be accurate." His argument continues, "The trial court even announced on the record that it had made a mistake in allowing certain evidence to be admitted before the jury." The portions of the record to which Fowler cites in making this argument concern the trial court excluding evidence of a trailer, which the State argued was used by Fowler to move the ATV to the location where it was found. The court found that no connection had been made between that trailer and Fowler and excluded testimony and evidence related to the trailer. As we pointed out above, the State was trying three different offenses involving three different transactions and time periods, so there was a great deal of evidence to present. We find nothing in the record suggesting Fowler opposed the State's motion to consolidate the three cases. In fact, he appears to have agreed to the consolidation.

[16]Because resolution of the issue is dispositive, we need not address Fowler's point of error challenging the introduction of extraneous offense evidence.

Nevertheless, in light of the erroneous and harmful admission of the Family Dollar video

recording, we reverse the trial court's judgment and remand this case for a new trial.[17]


                                        Bailey C. Moseley
                                        Justice


Date Submitted:    October 6, 2016
Date Decided:      January 27, 2017

Publish

---

[17]The United States Supreme Court has clearly and unequivocally distinguished between the consequences that flow from reversals caused by trial error, such as in this case, and those resulting from insufficient evidence to convict:

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

*Burks v. U.S.*, 437 U.S. 1, 15 (1978).

14