

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00066-CR

_____


DARYL CHRISTOPHER SIMMONS, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2128975


Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

When Daryl Christopher Simmons submitted to a required drug test while under indictment and free on bond for a different felony, he tested positive for methamphetamine and was taken into custody. Granted permission to lock his car, Simmons was escorted out of the Hopkins County Courthouse into the adjacent parking area by Hopkins County Deputy Major Willis. Though handcuffed, Simmons managed to flee in his vehicle, while Willis was standing by Simmons in the open, driver-side door of the vehicle with Willis's hand on the vehicle. Simmons's subsequent conviction[1] for escape[2] included a deadly weapon finding as to his use of his vehicle to endanger Willis. The only issue in this appeal of that conviction is whether there was sufficient evidence to support that finding. Because we conclude that the evidence is sufficient, we affirm the judgment of the trial court.

Courthouse surveillance video from the time of the escape shows Willis escorting Simmons to the court's parking lot. Simmons was handcuffed and was escorted to a white sedan in the court's parking lot. After checking the passenger-side window, Simmons went to the other side and sat in the driver's seat. He then started the car's motor. Willis testified that Simmons could not get one of the windows up and that he allowed Simmons to start the car to use the automatic window controls. The video then depicts Willis standing between the open, driver-side door and the driver's seat. Willis leaned in toward the steering wheel just before Simmons

---

[1]Simmons pled true to two enhancement allegations and was sentenced to sixty-five years' incarceration.

[2]*See* TEX. PENAL CODE ANN. § 38.06.

2

drove away, with the driver's door still open. Willis can be seen momentarily holding the driver-side door and almost losing his balance as Simmons drove away.

Willis described Simmons as "racing off" and testified that Simmons's driving was "reckless." He testified further, "[T]hank goodness I wasn't in front of that door when he pulled out[,] because his door was open. I was off to the side. But he could have still [run] over my foot or knocked me over if I leaned against the vehicle." Another deputy, Zachary Horne, testified that a motor vehicle "[a]bsolutely" could be used as a deadly weapon. Simmons was found at his home later that night and taken back into custody.

Simmons testified and admitted that he was the person in the video who was arrested and who then drove away while Willis was standing in the open doorway of his car. He denied intentionally consuming methamphetamine that day and claimed that his wife, whom he said suffered from "multiple personalities," spiked his morning coffee with something that caused him to not be in his "right frame of mind when the situation occurred."[3] He acknowledged being under the influence of some substance on the day of his arrest and told the jury he remembered going to his car to lock it. He remembered nothing more until he woke at home, still wearing handcuffs.[4] Simmons also admitted having two previous felony convictions for possession of methamphetamine, the most recent of which happened only one month before the trial in this case. He insisted, though, that he was not a drug user.

---

[3]Simmons testified that his wife sent him "a letter apologizing" "for being childish and stupid and wrong." He said that he had the letter in his possession as he testified, but he made no attempt to introduce the letter as evidence.

[4]Outside the presence of the jury, Simmons told the trial court that his wife had put methamphetamine and peyote in his coffee that morning, but he did not name those substances in his testimony.

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). A motor vehicle may be found to have been used or exhibited as a deadly weapon "if it is used in a manner that is capable of causing death or serious bodily injury." *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson*, 589 S.W.3d at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13). "It is not

4

required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based on an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

Simmons argues that a rational jury could not have found that he used or exhibited a motor vehicle as a deadly weapon during his escape. He claims that there is no evidence to show Willis was actually endangered as Simmons drove his car from the court's parking lot. Simmons further claims that there was no evidence that he drove the car "in a deadly manner during" his escape. At most, he claims, the evidence showed a "hypothetical capability of causing death or serious bodily injury" as he fled the parking lot. We disagree with Simmons's assessment of the record.

5

"A motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodily injury and therefore can be a deadly weapon." *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992). It is not necessary that the person driving the vehicle intend it to be used as a deadly weapon. *See Tyra v. State*, 897 S.W.2d 796, 799 (Tex. Crim. App. 1995). Nor is it required that the use of the motor vehicle causes death or serious bodily injury. *See Drichas v. State*, 175 S.W.3d 795, 797 (Tex. Crim. App. 2005). All that is required is that the evidence show that "'the manner' in which [the motor vehicle] was either used or intended to be used was '*capable*' of causing death or serious bodily injury." *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2008) (quoting *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008)).

"To sustain a deadly weapon finding requires evidence that others were endangered, and not merely a hypothetical potential for danger if others had been present." *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001).[5] In *Sturgis v. State*, No. 12-19-00313-CR, 2021 WL 219295, at \*3 (Tex. App.—Tyler Jan. 21, 2021, no pet.) (mem. op., not designated for publication), a police officer reached into the defendant's car to pull him out and arrest him. The defendant "shifted the vehicle in reverse and abruptly backed up," while the officer's "hand was in the door and he was leaning into the driver's side of the vehicle." *Id.* at \*2. That, combined with the defendant's running a red light and driving through ditches to avoid the officers' pursuit, was enough to sustain the trial court's finding that Sturgis's use of the car "placed others in actual danger of death or serious bodily injury." *Id.* at

---

[5]The Texas Court of Criminal Appeals adopted the appellate court's opinion "dealing with the merits of appellant's deadly weapon claim" "as [its] own without further comment." *Mann*, 58 S.W.3d 132.

6

*3. As a result, the court sustained the finding that Sturgis used the vehicle as a deadly weapon while evading arrest or detention with a motor vehicle. *Id.*[6]

Here, the video evidence shows Willis standing between the open, driver-side door and Simmons, who sat in the driver's seat. After Simmons started the car, Willis reached for the steering wheel as the car began to move, and he momentarily lost his balance as Simmons drove away with the driver-side door still open. Simmons admitted being under the influence of some form of controlled substance; he admitted that he was not in his "right mind," and he did not recall events between being taken into custody and waking up at home wearing handcuffs.[7] At the very least, a rational jury could have found this conduct reckless.[8] Reckless driving is a factor in determining whether a vehicle was used as a deadly weapon. *See Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009) ("Our preceding discussion establishes that some of the criteria used by the court of appeals include factors that we have found determinative in prior cases—dangerous and reckless driving and the violation of traffic laws."). Here, Simmons's reckless driving caused Willis to almost lose his balance. In that situation, he could easily have

---

[6]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[7]The jury charge included an instruction on the defense of involuntary intoxication.

[8]The Penal Code defines reckless as follows:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c).

been knocked to the pavement and been seriously hurt. Willis was placed in real, not hypothetical, danger by Simmons's reckless driving. While Simmons did not run a red light or drive through ditches, that was just a fortuitous circumstance.

A rational jury could have found that the manner in which Simmons drove his car was capable of causing serious bodily injury to Willis. *See Moore*, 520 S.W.3d at 913 ("We conclude that a rational fact-finder could infer that Appellant was using his motor vehicle in this case in a manner that was capable of causing death or serious bodily injury, even though it did not do so, and regardless of whether he intended it to. It does not amount to speculation for us to conclude that there was more than 'a hypothetical potential for danger if others had been present.'" (quoting *Mann*, 13 S.W.3d at 92)).

We overrule Simmons's sole point of error and affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     November 7, 2022
Date Decided:       December 7, 2022

Do Not Publish