

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00001-CR
_____

BRIAN EVERETT GUMPERT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2229102

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

After a jury found Brian Everett Gumpert guilty of possession of a controlled substance[1] in an amount of one gram or more but less than four grams, the trial court sentenced him to thirty-five years' confinement in prison[2] and assessed $290.00 in court costs and $465.00 in reimbursement fees.[3]  Gumpert appeals, arguing that (1) the trial court erred when it denied his motion to suppress, (2) the evidence was insufficient to support the jury's guilty verdict, (3) the evidence was insufficient to support the trial court's assessment of attorney fees, and (4) the trial court prematurely assessed a time payment fee.

For the reasons below, we modify the trial court's judgment and the clerk's bill of costs by deleting the assessment of (1) $350.00 in attorney fees, and (2) the $15.00 time payment fee. As modified, we affirm the trial court's judgment.

## I.      Gumpert's Motion to Suppress

In his first point of error, Gumpert contends that the trial court abused its discretion by denying Gumpert's motion to suppress the fruits of an illegally prolonged roadside detention. According to Gumpert, "[t]he arresting officer's prolonged detention of Gumpert to summon a K-9 unit and conduct an open-air sniff of the vehicle, unjustified by any reasonable suspicion

---

[1]Gumpert was alleged to have been in possession of methamphetamine.

[2]Gumpert pled true to two sentencing enhancements, increasing the allowable sentencing range.  *See* TEX. PENAL CODE ANN. § 12.42(d).

[3]The trial court's December 13, 2022, judgment of conviction originally assessed $475.00 in reimbursement fees. On December 15, 2022, the trial court entered a nunc pro tunc order, stating, "On the Court's own motion it is hereby ordered that the Judgment entered on 12/13/2022, be corrected to read the following:  Reimbursement Fees: $465.00."

that any additional criminal activity was afoot, exceeded the scope of the initial stop and violated the Fourth Amendment." The State argues that Gumpert waived this point of error. We agree.

Prior to trial, the State and Gumpert agreed that the trial court should review the responding officers' body-camera footage and then rule on Gumpert's motion. The trial court reviewed the footage and, thereafter, denied Gumpert's motion.

As an initial matter, Gumpert states in his appellate brief that "[t]he lower court did not conduct an evidentiary hearing regarding Gumpert's motion to suppress; rather, the court denied the motion based on its review of the officers' body-camera footage." The parties agreed to that arrangement. The trial court record reflects the following:

> THE COURT: . . . . Now, we did have a development last week. On the afternoon of December 8, Mr. Hyde, on behalf of Mr. Gumpert, made the State aware that he believed he had a suppression issue as to the stop in this case and wished to raise that.
>
> Mr. Hyde and [the State] communicated and there was an agreement among the parties to submit the issue to the Court, and this was actually even before the official filing of the motion to suppress, for the Court to review the body cam footage from the initial detaining officer, which was Deputy Foley, and then the responding officer, who came just moments after that, Deputy Steward. And the Court did that.

Neither party made a correction or objection to the court's recollection of events. When the trial court denied Gumpert's suppression motion, Gumpert did not object to the lack of an evidentiary hearing.

Next, even though Gumpert secured a ruling, he waived any complaint about the denial of his suppression motion when, during trial, Gumpert affirmatively stated that he had "[n]o objection" to the admission of the officers' body-camera footage that contained the evidence

3

Gumpert sought to suppress pretrial. Noting that there were no objections, the trial court admitted both of them.

In general, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context" and that either the trial court "ruled on the request, objection, or motion, either expressly or implicitly," or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a). However, "[a]n adverse ruling on a pretrial motion to suppress evidence will ordinarily suffice to preserve error on appeal, and a defendant need not specifically object to the evidence when it is later offered at trial." *Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). In *Thomas*, the Texas Court of Criminal Appeals explained,

> We see no principled reason why appellate courts should not apply the "no objection" waiver rule with comparable flexibility. Particularly when a defendant has taken pains to file a pretrial motion to suppress, develop testimony at a hearing, and secure an appealable adverse ruling, it is unrealistic to presume that he would lightly forego the opportunity to vindicate his interest on appeal.

*Id.* at 885. The court continued, "No purpose is served by insisting that earlier-preserved error is abandoned by a later statement of 'no objection' when the record otherwise establishes that no waiver was either intended or understood." *Id.* That said, the court also clarified,

> [A]s with error preservation in general, the rule that a later statement of "no objection" will forfeit earlier-preserved error is context-dependent. By that we mean that an appellate court should not focus exclusively on the statement itself, in isolation, but should consider it in the context of the entirety of the record. If

4

the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as "waived," but should resolve it on the merits. On the other hand, if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. Under the latter circumstance, the affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood.

*Id.* at 885–86.

We believe this case falls into the latter category. First, the parties agreed days before the trial began that the trial court should review the body-camera footage and then make its decision as to the merits of Gumpert's motion to suppress. In doing so, both parties sacrificed the opportunity to question the responding officers and any other potentially relevant witnesses. Likewise, they gave up the chance to present their arguments to the trial court in support of their positions. Furthermore, Gumpert had more than one opportunity to object to the trial court's reasoning and its denial of the motion. Lastly, during trial, when the State offered the two exhibits into evidence at separate times, Gumpert said nothing to indicate that he was preserving his right to appeal the trial court's earlier decision.

Reviewing the record as a whole, we believe that Gumpert waived this issue on appeal. At the very least, we "cannot tell whether an abandonment was intended or understood." *Id.* In either circumstance, we conclude that Gumpert's "[n]o objection" responses amounted to a waiver of his appellate claim that the trial court erred when it denied his motion to suppress.

We overrule Gumpert's first point of error.

5

## II.    The Evidence Was Sufficient to Support the Jury's Verdict

In his second point of error, Gumpert maintains that there was legally insufficient evidence to support his conviction "given the State's failure to prove beyond a reasonable doubt the existence of affirmative links connecting Gumpert with the methamphetamine."   We disagree.

### A.    Standard of Review

Legal "sufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically correct jury charge."   *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).   The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'"   *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (quoting *Hooper*, 214 S.W.3d at 13).   "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'"   *Id.* (quoting *Hooper*, 214 S.W.3d at 13).   "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone."   *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015)).   "Further,

'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it." *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

## B. Evidence

On February 14, 2022, Hopkins County Deputy Sheriff Issac Foley made a traffic stop of a truck in which Gumpert was a passenger. Foley stated that he made the stop because the truck had a defective brake "light that was out . . . ." According to Foley, Dana Brantley was the driver of the vehicle, and Gumpert, who owned the vehicle, was the passenger. Foley said that, as he approached, he saw "a lot of movement inside the vehicle" on both sides.[4] When he began speaking with Gumpert, Gumpert failed to make eye contact with him, and he "closed his eyes and looked down as if he were hiding something or there was something illegal in the vehicle." Foley said that, based on his training and experience, a person who refuses to make eye contact with him is "[e]ither . . . lying or they have something to hide." When Foley asked Gumpert for

---

[4]Shortly after the stop, Sergeant Tanner Steward, Foley's supervising officer, arrived at the scene. Steward's testimony was substantially similar to Foley's testimony. Both of the officers' body-camera footage was offered into evidence by the State, over no objection by Foley, and admitted by the trial court.

consent to search his truck, Gumpert refused to allow the search. On the basis of his refusal to consent, Foley contacted Drew Fisher, who was a K-9 deputy. Gumpert asked Foley whether the dog would alert on the scent of another dog. Foley said the fact that Gumpert was nervous about what the dog might find was an indication to him that "there could possibly be something illegal in the vehicle." After Fisher and his dog, Axe, arrived, Axe "alerted positive to the odor of narcotics inside the vehicle." Foley said that, based on Axe's alert, he conducted a search of Gumpert's truck. Foley found, under the passenger seat, a clear baggie that contained a crystal-like substance that Foley believed to be methamphetamine.[5] At that time, Foley arrested both Gumpert and Brantley because "[n]either [one of them] claim[ed] ownership of the methamphetamine."

When Foley placed Gumpert in the back of the patrol vehicle, Gumpert asked him "if . . . Brantley ha[d] to go to jail, even if he said the methamphetamine was his." Gumpert then asked Foley, "What if I say it's mine?" According to Foley, other than asking him those questions, he had not admitted that the methamphetamine belonged to him. Yet, when Gumpert was being transported to the Hopkins County Jail, Gumpert told Steward, "It's mine. It isn't her dope."

**C.      Discussion**

Looking at the elements of the offense with which Gumpert was charged, the State was required to prove beyond a reasonable doubt that (1) Gumpert (2) intentionally or knowingly (3) possessed methamphetamine (4) in an amount of one gram or more but less than four grams. "To prove unlawful possession of a controlled substance, the State must prove that:  (1) the

---

[5]Foley performed a field test on the substance to determine if it was, in fact, methamphetamine. The test results confirmed that the substance was methamphetamine.

8

accused exercised control, management, or care over the substance and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015). Here, Gumpert claims only that the State failed to prove that the methamphetamine belonged to him. We disagree.

Possession may be established by proving either actual or constructive possession. *Stubblefield v. State*, 79 S.W.3d 171, 177 (Tex. App—Texarkana 2002, pets. ref'd) (Grant, J., concurring in part, dissenting in part) (citing *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1986)). While mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drug, presence or proximity to drugs when combined with other direct or circumstantial evidence may be sufficient if the proof amounts to more than a strong suspicion. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006).

Unless the accused had exclusive possession of the place where the controlled substance was found, the State must present "additional independent facts and circumstances which affirmatively link the accused to the contraband" in order to prove possession beyond a reasonable doubt. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981); *see Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd).

"The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153

S.W.3d at 406. The following, nonexclusive list has been used to establish a person's possession of contraband,

> Recognized factors include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd) (quoting *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.)).

The number of links is not dispositive; rather, we look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.) (holding "that number of links is less important" than degree to which links tend to connect defendant to controlled substance).

Here, Gumpert was the sole passenger in the vehicle, and the methamphetamine was found underneath the passenger seat. Although he was the passenger at the time of the stop, the evidence showed that he also owned the vehicle. In addition, Foley testified that, during the stop, Gumpert refused to make eye contact, refused to exit the vehicle, and refused to answer his questions, all of which could have amounted to consciousness of guilt. Furthermore, Gumpert

asked Foley about Brantley's status, seemingly indicating that the narcotics did not belong to her. But, most importantly, on the way to the jail, Gumpert admitted to Steward that the methamphetamine belonged to him.

As always, the jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Williamson*, 589 S.W.3d at 297 (second alteration in original) (quoting *Thomas*, 444 S.W.3d at 10). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). In this case, it appears that the jury believed the State's witnesses.

When we look at all the evidence, both direct and circumstantial, we find that there was ample evidence to support the jury's finding that Gumpert knowingly possessed methamphetamine in the amount alleged in the State's indictment. Accordingly, we find that the evidence was legally sufficient to support Gumpert's conviction.

We overrule Gumpert's second point of error.

## III.     The Trial Court Erred When it Assessed Attorney Fees

Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of a court-appointed attorney's fees only if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided . . . including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Supp.). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering

11

reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Since there is no finding of Gumpert's ability to pay them, the assessment of the attorney fees was erroneous. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013); *see also Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010); *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex. App.—Texarkana 2013, no pet.).

Due to Gumpert's indigency, he received a court-appointed attorney at trial, as well as on appeal. The record lacks any indication that Gumpert's financial status or ability to pay changed at any point in the case. *See Mayer*, 309 S.W.3d at 556. Even so, the judgment, via the trial court's nunc pro tunc order, reflects that Gumpert was assessed $465.00 in reimbursement fees. The clerk's bill of costs indicates that only $350.00 of the $465.00 reimbursement fee was assessed for attorney fees.[6]

Notwithstanding that we denied Gumpert's challenge to the sufficiency of the evidence, appellate courts "have the authority to reform judgments and affirm as modified in cases where there is nonreversible error." *Sharpe v. State*, 607 S.W.3d 446, 448 (Tex. App.—Texarkana 2020, no pet.) (quoting *Ferguson v. State*, 435 S.W.3d 291, 293 (Tex. App.—Waco 2014, pet. struck), *overruled on other grounds by Cummins v. State*, 646 S.W.3d 605 (Tex. App.—Waco 2022, pet. ref'd).

---

[6]In addition to the $350.00 in assessed attorney fees, the clerk's bill of costs showed the following additional reimbursement costs: subpoena/witness fee – $5.00; sheriff commit or release fee – $20.00; notice to appear – $5.00; time payment fee – $15.00; sheriff take & approve bond – $20.00; and sheriff execute warrant fee – $50.00. All of these fees amounted to $465.00.

Accordingly, we sustain Gumpert's third point of error and modify the trial court's judgment and the clerk's bill of costs by deleting the assessment of attorney fees in the amount of $350.00.

## IV.     The Trial Court Erred When Accessed a Time Payment Fee

We agree with Gumpert that the time payment fee must be deleted. The Texas Court of Criminal Appeals has concluded that a time payment fee like the one imposed here "must indeed be struck for being prematurely assessed because a defendant's appeal suspends the duty to pay court costs and therefore suspends the running of the clock for the purposes of the time payment fee." *Dulin v. State*, 620 S.W.3d 129, 129 (Tex. Crim. App. 2021). "As a consequence, even now, assessment of the time payment fee in this case would be premature because appellate proceedings are still pending." *Id.* Pursuant to *Dulin*, we strike the time payment fee "in [its] entirety, without prejudice to [it] being assessed later if, more than 30 days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution" owed. *Id.* at 133.

Accordingly, we sustain Gumpert's fourth point of error and modify the judgment and the bill of costs by deleting the prematurely imposed time payment fee.

13

## V.    Conclusion

We modify the trial court's judgment and the clerk's bill of costs by deleting the assessment of $350.00 in attorney fees and the $15.00 time payment fee.  As modified, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     August 31, 2023
Date Decided:       August 31, 2023

Do Not Publish