

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00223-CR

ANTHONY DEVON BYRD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 23-0140X

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Harrison County jury convicted Anthony Devon Byrd of possession of a controlled substance in penalty group 1 (methamphetamine) in an amount of 400 grams or more[1] and assessed a sentence of forty years' imprisonment. The trial court entered its judgment of conviction in accordance with the jury's verdict. Byrd's sole issue on appeal asserts that the evidence is legally insufficient to show he knowingly possessed the methamphetamine. Because we find the jury's verdict was supported by legally sufficient evidence, we affirm the trial court's judgment.

## I. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "Our rigorous review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(f) (Supp.).

2

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets

3

out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

## II. The Evidence at Trial

The evidence at trial showed that the Joint Harrison County Violent Crime and Narcotics Task Force used a CI[2] to make four controlled purchases of methamphetamine and hydrocodone from Byrd. Based on those purchases, the task force obtained a search and arrest warrant to search 2626 West Loop 390, Apartment 223, in Marshall, the residence where the last purchase was made, and to arrest Byrd, who was accused of delivery of a controlled substance in penalty group 1.

When the warrant was executed, Byrd was in the master bedroom and was the only occupant of the house.[3] Byrd was taken into custody, and suspected marihuana and some money were found on his person. The money found on Byrd consisted of three twenty-dollar bills and one ten-dollar bill with serial numbers that matched the serial numbers of the bills provided to the CI to purchase narcotics from Byrd.

When they searched the apartment, the task force found approximately 501 grams of suspected Adderall, roughly twelve grams of methamphetamine, six grams of oxycodone, eight grams of hydrocodone, eight grams of marihuana, other controlled substances, and drug paraphernalia. Upon analysis by the Texas Department of Public Safety Crime Laboratory in

---

[2]Confidential informant or cooperating individual.

[3]The apartment had two bedrooms, but only the master bedroom had a bed that was set up. The other bedroom only contained a bedframe leaning against a wall and other miscellaneous items.

Tyler, the suspected Adderall was determined to be 469.57 grams of methamphetamine. The methamphetamine was contained in 1,976 orange pills imprinted "AD/30," packaged in ten plastic bags, and located in a box in the closet of the bedroom where Byrd was found.

The task force also found a debit card on the kitchen counter of the apartment with the name "Thony Byrd." Also, after Byrd was arrested, he was taken to the Harrison County Jail. On his book-in sheet, Byrd gave his address as 2626 West Loop 390, Apartment 223, in Marshall.

Caleb Caldwell, a detective with the Marshall Police Department assigned to the task force, acknowledged that he did not know whose name was on the lease to the apartment. He also testified that narcotics are sometimes sold out of "trap houses,"[4] which are often not owned by the person selling the drugs.

Yesenia Martinez, the mother of Byrd's child, testified that she had asked Byrd to leave her house about four days before he was arrested. Martinez maintained that Byrd did not have a job or money to rent the apartment but that he told her he had found a place to stay for a few weeks. He brought her to the apartment, and she saw items there that belonged to someone other than Byrd.

## III. Analysis

Under the statute and the indictment, in order to convict Byrd, the State was required to show, beyond a reasonable doubt, that Byrd (1) intentionally or knowingly (2) possessed (3) methamphetamine (4) in an amount of 400 grams or more. *See* TEX. HEALTH & SAFETY

---

[4]A "trap house" is a house used to sell narcotics.

CODE ANN. § 481.115(a), (f) (Supp.). Byrd only challenges the sufficiency of the evidence showing that he knowingly possessed the methamphetamine. He argues that, since he was only staying at the apartment temporarily and was not the sole occupant of the apartment, the State failed to prove beyond a reasonable doubt the existence of affirmative links connecting him with the methamphetamine. We disagree.

"To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015). This may be shown by direct or circumstantial evidence, but "it must establish . . . that the accused's connection with the drug was more than just fortuitous." *Id.* at 406 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

Mere presence of the defendant in the place where the drugs are found is insufficient to establish possession. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). "Presence or proximity to drugs, however, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care provided the proof amounts to more than a strong suspicion." *Hutchison v. State*, 424 S.W.3d 164, 170 (Tex. App.—Texarkana 2014, no pet.) (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)).

If the defendant was not in exclusive possession of the place where the contraband was found, "additional independent facts and circumstances which affirmatively link the accused to the contraband" must be presented to establish his possession of the contraband. *Deshong v.*

6

*State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981). The Texas Court of Criminal Appeals has recognized fourteen non-exclusive factors that may affirmatively link a defendant to the contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). In our analysis, "[i]t is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id.* at 162.

Here, the logical force of the evidence strongly links Byrd to the methamphetamine. Before the search, a CI had purchased methamphetamine and hydrocodone from Byrd, the last of which was purchased at the apartment where Byrd was searched and arrested. The search and arrest warrant authorized the search of the apartment for controlled substances and the arrest of Byrd, who was accused of delivery of a controlled substance in penalty group 1. When the search was conducted, Byrd was the only person present in the apartment, and he was found in the bedroom where the methamphetamine was discovered. Also, other contraband, including hydrocodone, was discovered in the apartment and on Byrd's person. Byrd was also in possession of the three twenty-dollar bills and the ten-dollar bill that were used by the CI in his

prior purchases of methamphetamine and hydrocodone. Further, both Byrd, on his book-in sheet, and Martinez, by testimony, affirmed that Byrd was residing in the apartment at the time of the search.

Based on our review, we find that the evidence supports the jury's finding that Byrd knowingly possessed the methamphetamine as alleged in the indictment. As a result, we find that the evidence was legally sufficient to support the trial court's judgment. We overrule Byrd's sole issue.

## IV.    Conclusion

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Chief Justice


Date Submitted:       April 9, 2024
Date Decided:         April 19, 2024

Do Not Publish